# Illinois Official Reports

## Supreme Court

***Sanders v. Illinois Union Insurance Co.*, 2019 IL 124565**

| | |
|---|---|
| Caption in Supreme Court: | RODELL SANDERS *et al.*, Appellees, v. ILLINOIS UNION INSURANCE COMPANY *et al.*, Appellants. |
| Docket No. | 124565 |
| Filed | November 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Celia Gamrath, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Christopher A. Wadley, of Walker Wilcox Matousek LLP, of Chicago, for appellant Illinois Union Insurance Company.<br><br>Agelo L. Reppas and Adam H. Fleischer, of BatesCarey LLP, of Chicago, for appellant Starr Indemnity & Liability Company.<br><br>Michael Kanovitz, Russell Ainsworth, and Ruth Brown, of Loevy & Loevy, of Chicago, for appellee Rodell Sanders. |

Paulette A. Petretti and Darcee C. Williams, of Scariano, Himes and Petrarca, Chtrd., of Chicago, for appellee City of Chicago Heights.

Justices JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1 In 1994, based on doctored evidence from the City of Chicago Heights Police Department, Rodell Sanders was charged with murder, attempted murder, and armed robbery. Sanders was wrongfully convicted and imprisoned for approximately 20 years before being exonerated in 2014. From November 2011 to November 2014, the City of Chicago Heights obtained primary liability insurance from Illinois Union Insurance Company (Illinois Union) and excess liability insurance from Starr Indemnity & Liability Company (Starr). The primary insurance policy indemnified Chicago Heights for, among other things, damages arising out of the "offense" of "malicious prosecution." At issue is whether the offense of malicious prosecution occurred during the policy period, thereby triggering the insurers' obligation to provide coverage. Based on the policy's terms, we conclude that coverage was triggered when Sanders was prosecuted in 1994.

¶ 2 BACKGROUND

¶ 3 On December 15, 1993, at around 2 a.m., two people were seated inside of a parked car when a group of men attacked them. The offenders robbed and shot both victims. One victim died. The survivor later provided Chicago Heights police officers with a description of two of the assailants. Officers arrested Sanders in January 1994. Sanders did not match either physical description provided by the surviving victim, and he had an alibi that was confirmed by alibi witnesses. Nonetheless, officers manipulated the evidence to ensure his conviction.[1]

¶ 4 For example, after the surviving victim described one of the assailants as tall and skinny, officers altered Sanders's photograph to make him appear taller and thinner. Then, officers included that image in a photographic lineup so that the surviving victim would identify him as one of the culprits. According to Sanders, officers engaged in this conduct because they bore a grudge against him and sought to protect the real murderer, who was an important witness

---

[1] Although municipalities may not prosecute felonies, a person or entity can be liable for commencing or continuing a malicious prosecution even if they do not ultimately wield prosecutorial power. Under Illinois law, liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 43. That Chicago Heights is liable for malicious prosecution under these principles based on the misconduct of its police officers is undisputed.

for the prosecution in other cases. Upon his conviction in January 1995, Sanders was sentenced to 80 years' imprisonment.

¶ 5    Sanders filed a postconviction petition, and in January 2011 the Cook County circuit court overturned the conviction and vacated his sentence. The appellate court affirmed its judgment in May 2012. Meanwhile, at some point in 2012, Chicago Heights provided Illinois Union and Starr with a notice of claim based on their policies from November 1, 2011, through November 1, 2014.[2]

¶ 6    The prosecution retried Sanders in August 2013, asking the jury to convict him on an additional theory of accountability. The second trial resulted in a mistrial. The prosecution retried Sanders again in July 2014, and the jury acquitted him. Sanders had filed a federal civil rights action against Chicago Heights in January 2013. After the jury acquitted him, Sanders amended the civil rights complaint to add claims of malicious prosecution.

¶ 7    Illinois Union responded to Chicago Heights' notice of claim in December 2014. At that time, it notified the city that it was declining to provide coverage because no covered events occurred during the policy periods. One year later, Starr similarly sent a declination, claiming that the malicious prosecution did not fall within the policy periods. Chicago Heights asked the insurers to reconsider their decisions, arguing that the date of Sanders's exoneration and his trials in August 2013 and July 2014 were discrete dates of loss.

¶ 8    The "general liability coverage part" of the insurance policy provides:

> "The *Insurer* will indemnify the *Insured* for *Damages* and *Claim Expenses* in excess of the *Retained Limit* for which the *Insured* becomes legally obligated to pay because of a *Claim* first arising out of an *Occurrence* happening during the *Policy Period* in the Coverage Territory for *Bodily Injury*, *Personal Injury*, *Advertising Injury*, or *Property Damage* taking place during the *Policy Period*." (Emphases in original.)

"With respect to *Personal Injury*," occurrence was defined as "only those offenses specified in the *Personal Injury* Definition." (Emphases in original.)

¶ 9    "*Personal injury*" was defined as "one or more of the following offenses *** [f]alse arrest, false imprisonment, wrongful detention or malicious prosecution *** wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of the owner, landlord or lessor." (Emphasis in original.) The policy provided that "[a]ll damages arising out of substantially the same *Personal Injury* regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one *Occurrence*." (Emphases in original.)

¶ 10                                Circuit Court Proceedings

¶ 11    In February 2016, Chicago Heights filed a complaint for declaratory judgment, legal relief, and monetary damages against Illinois Union and Starr. The city sought a declaration that it was entitled to coverage under the insurance policy, thereby requiring the insurers to indemnify it for attorney fees and costs that were paid in excess of the retained limit. Without waiving its right to reassert claims under earlier policies, Chicago Heights focused its claims for coverage on the policies from 2012-13 and 2013-14.

---

[2]Illinois Union was the primary insurer. Starr's policy was a "follow form excess liability policy," and thus, its policy relied on the provisions set forth in Illinois Union's policy.

¶ 12    In September 2016, a consent judgment was entered in Sanders's favor in the federal civil rights action for $15 million. Chicago Heights agreed to contribute $2 million, and United National Insurance Company (Chicago Heights' insurer from 1994) agreed to contribute $3 million toward the judgment. Additionally, Chicago Heights assigned its rights against Illinois Union and Starr to Sanders in exchange for his agreement not to seek the remaining $10 million from the city.

¶ 13    Thereafter, Chicago Heights moved the circuit court to voluntarily dismiss its declaratory judgment action without prejudice. In late October 2016, the circuit court granted the city's dismissal motion, rendering all pending motions and outstanding discovery moot.

¶ 14    In November 2016, under section 2-1008(a) of the Code of Civil Procedure (735 ILCS 5/2-1008(a) (West 2016)), the circuit court substituted Sanders as a plaintiff in this action. Based on the policy provisions quoted above, Sanders argued that the insurers' denial of coverage to Chicago Heights was "wrongful, unreasonable, and vexatious." Because the city had assigned its rights to him, Sanders asserted that Illinois Union and Starr were required to pay him at least the $10 million that was outstanding from the settlement.

¶ 15    The insurers filed an amended motion to dismiss the complaint with prejudice. Illinois Union and Starr noted that Sanders "was maliciously prosecuted in 1994 resulting in his conviction and incarceration for a crime he did not commit." In their view, his injury predated the effective dates of their policies. Illinois Union and Starr therefore argued that they were neither required to provide coverage for Chicago Heights nor obligated to contribute to its settlement with Sanders.

¶ 16    In January 2018, the circuit court granted the insurers' amended motion to dismiss. The court observed that, under the policy, Illinois Union and Starr had to provide coverage to Chicago Heights for damages for personal injury first arising out of an occurrence during the policy period. The court determined that the policy focused on a requisite act and injury during the policy period, rather than the accrual of a completed cause of action. The court acknowledged that, to prevail on a tort claim of malicious prosecution, a plaintiff must establish, among other things, that the prior proceeding terminated in his favor. But it also noted that the vast majority of courts to consider the issue have ruled that the filing of the underlying malicious suit was the occurrence causing personal injury under an insurance policy. Sanders and Chicago Heights appealed.

¶ 17                            The Appellate Court's Decision

¶ 18    On appeal, a split panel reversed. The appellate court majority confirmed that the dispute centered on when the "offense" of malicious prosecution was deemed to occur under the policy. 2019 IL App (1st) 180158, ¶ 17. Offense was not defined in the policy; therefore, relying on Black's Law Dictionary (10th ed. 2014), the majority concluded that the term referred "to the legal cause of action that arises out of wrongful conduct, not just the wrongful conduct itself." 2019 IL App (1st) 180158, ¶ 18. Further, it observed that the list of offenses contained in the policy referred exclusively to legal causes of action by their proper legal names, rather than to the underlying wrongful acts. *Id.* ¶ 19. Accordingly, the majority ruled that the plain and ordinary meaning of the term offense, as used in relation to the phrase malicious prosecution, referred to the completed cause of action. *Id.*

¶ 19    The dissent argued that, "[u]nder the clear and unambiguous language of the Illinois Union/Starr policies, the malicious prosecution of Sanders happened in 1994 when he was wrongfully charged with murder; it did not happen in either 2013, when he was retried, or in 2014, when after his third trial, he was acquitted." *Id.* ¶ 37 (Mason, P.J., dissenting). In the dissent's view, "an 'offense' is the wrongful conduct or unlawful act," and that occurred when false charges were brought against Sanders. *Id.* ¶ 40. It also found "[t]he majority's attempt to distinguish relevant Illinois authority based on minor differences in policy language *** unpersuasive." *Id.* ¶ 44. Finally, the dissent rejected Sanders's claim that his retrials constituted additional triggers for coverage, noting that his initial prosecution and the retrials all arose out of the same false charges against him. *Id.* ¶ 49.

¶ 20    This court granted Illinois Union and Starr's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 21                                    ANALYSIS

¶ 22    The question before us is whether the offense of malicious prosecution occurred during the policy period, such that Illinois Union and Starr were required to provide coverage to Chicago Heights. The proper construction of provisions of an insurance policy is a question of law that we review *de novo*. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006). Because an insurance policy is a contract, the rules applicable to contract interpretation govern. *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 17. Our "primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*

¶ 23    When the terms of a policy are clear and unambiguous, we will ascribe to them their plain and ordinary meaning. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455-56 (2010). And as we have previously observed, the fact that a term is undefined does not render it ambiguous. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006). Rather, ambiguity exists only if a term is susceptible to more than one reasonable interpretation. *Id.* As with any contract, we construe an insurance policy as a whole, giving effect to each provision where possible because we must assume that it was intended to serve a purpose. *Valley Forge*, 223 Ill. 2d at 362.

¶ 24    The policy in this case provides that Illinois Union and Starr will indemnify Chicago Heights for damages for which Chicago Heights becomes legally obligated to pay because of a claim arising out of the offense of malicious prosecution, happening during the policy period, and taking place during the policy period. Thus, to resolve when the malicious prosecution occurred, our interpretation of the word "offense" becomes central. The parties have proffered different meanings of the term. For example, citing Merriam-Webster's Online Dictionary, Illinois Union contends that "the term is primarily used to mean something that outrages the moral or physical senses." For its part, Chicago Heights refers us to Black's Law Dictionary (10th ed. 2014), which provides that an "offense" is a "violation of the law; a crime, often a minor one."

¶ 25    Considering the various proposals, we conclude—as another panel of the appellate court recently did under substantially similar circumstances—that the most "straightforward reading of this term [(offense)] indicates that coverage depends upon whether the insured's offensive

conduct was committed during the policy period." (Emphasis omitted.) *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 30.

¶ 26 In that case, the question was whether an insurance company was required to provide coverage for its insured in an underlying lawsuit for malicious prosecution. *Id.* ¶ 3. When the wrongfully convicted defendant was framed in 1999, the company was not the insurer; however, it was when he was exonerated in 2014. *Id.* ¶ 7. Under the policy, the company would cover a " ' "[p]ersonal injury" caused by an offense arising out of your business *** but only if the offense was committed *** during the policy period.' " *Id.* ¶ 8. Personal injury was defined to include malicious prosecution; the term offense was undefined. *Id.* ¶ 9. The trial court granted summary judgment in favor of the insurer. On appeal, the court was "not convinced that the policy's use of the word 'offense' indicate[d] the parties' intent that coverage would only be triggered upon fulfillment of all elements of a tort claim under Illinois law." *Id.* ¶ 30. Observing that no language in the policy indicated an "intent to limit the meaning of 'offense' by requiring the completion of tort law elements," the appellate court declined to "assume that the policy incorporate[d] tort law." *Id.* ¶ 31.

¶ 27 Here, too, we conclude that the word offense in the insurance policy refers to the wrongful conduct underlying the malicious prosecution. In so ruling, we consider both the meaning of the word offense and the contractual requirement that the offense must both happen *and* take place during the policy period. A malicious prosecution neither happens nor takes place upon exoneration. See, *e.g.*, *Mitchinson v. Cross*, 58 Ill. 366, 370 (1871) ("The gist of the action for malicious prosecution is, that the prosecutor acted without probable cause."); *Spiegel v. Zurich Insurance Co.*, 293 Ill. App. 3d 129, 134 (1997) (" 'Malicious prosecution' is the bringing of a suit known to be groundless ***."). Further, courts have found that the " 'personal injury' of 'malicious prosecution' " in the context of an insurance policy differs from "the common-law elements of the tort of malicious prosecution." *County of McLean v. States Self-Insurers Risk Retention Group, Inc.*, 2015 IL App (4th) 140628, ¶ 33; see also *City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214, 220 (Mo. Ct. App. 2012) ("[I]n the context of insurance, malicious prosecution occurs upon the institution of the underlying action.").

¶ 28 That this is an occurrence-based policy also weighs heavily into our decision. "A typical occurrence-based policy, containing multiple references to coverage for occurrences or offenses happening during the term of the policy, reflects the intent to insure only for the insured's acts or omissions that happen during a policy period." *Indian Harbor Insurance Co. v. City of Waukegan*, 2015 IL App (2d) 140293, ¶ 33. If we were to deem exoneration the trigger for coverage of a malicious prosecution insurance claim, liability could be shifted to a policy period in which none of the acts or omissions giving rise to the claim occurred. That would violate the intent of the parties to an occurrence-based policy.

¶ 29 Emphasizing that malicious prosecution is a tort, Chicago Heights and Sanders urge us to find that the policy must have intended for all elements of the tort to be satisfied before finding that the offense has occurred. But as in *First Mercury*, here, the language of the policy does not require that the elements of the tort be satisfied. Accordingly, we cannot read into it the requirements of a tort claim for malicious prosecution. See *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 22 (observing that "the 'occurrence' triggering

- 6 -

insurance coverage of a malicious-prosecution claim may precede the accrual of the cause of action").[3]

¶ 30   Sanders and Chicago Heights also highlight decisions from the United States Court of Appeals for the Seventh Circuit, such as *American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475, 479 (7th Cir. 2012), which ruled that exoneration was "the 'occurrence' " for insurance coverage of a malicious prosecution claim. We note that the federal court of appeals relied heavily on *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978), a case that we subsequently reversed on other grounds. Although we take no issue with the federal appellate court's attempt to predict Illinois law, we clarify that the appellate court's reasoning in *Security Mutual* does not reflect our approach for determining when coverage for malicious prosecution occurs under an occurrence-based insurance policy.

¶ 31   Separately, Chicago Heights and Sanders contend that his retrials in 2013 and 2014 constituted separate triggers for coverage. That claim is foreclosed by the language of the policy. Under the policy, "[a]ll damages arising out of substantially the same *Personal Injury* regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one *Occurrence*." (Emphases in original.) Although another theory of liability was added during the retrials, the personal injury (*i.e.*, the initiation of a suit based on evidence manufactured by Chicago Heights police officers) remained the same.

¶ 32   Sanders also argues that our decision in *Nicor* compels a finding that his two retrials were separate occurrences that triggered coverage. It does not. In that case, mercury had spilled out of gas meters and into customers' homes. *Nicor*, 223 Ill. 2d at 410-11. In a dispute over insurance coverage, the company argued that each of the 195 spills into different homes constituted a single occurrence. *Id.* at 414. This court rejected that claim, observing that no evidence established that the spills resulted from a common cause. *Id.* at 433. Here, by contrast, Chicago Heights officers' fabrication of evidence to support unfounded charges against Sanders was the single cause of all three trials and, thus, the single relevant occurrence under the policy.

¶ 33                                    CONCLUSION

¶ 34   We hold that insurance coverage for the underlying malicious prosecution claim was triggered when Sanders was maliciously prosecuted in 1994. Because the triggering event occurred more than a decade before Illinois Union and Starr issued their policies to Chicago Heights, the insurers were not required to indemnify the city for damages under the policies.

---

[3]Our focus remains on the provisions of this contract. Yet it has not escaped our notice that most courts that have considered this issue also have ruled that a malicious prosecution for insurance purposes occurs at the commencement of the prosecution. See, *e.g.*, *First Mercury*, 2018 IL App (1st) 171532; *St. Paul Fire & Marine Insurance Co. v. City of Waukegan*, 2017 IL App (2d) 160381; *County of McLean*, 2015 IL App (4th) 140628; *Indian Harbor*, 2015 IL App (2d) 140293; *City of Zion*, 2014 IL App (2d) 131312; see also, *e.g.*, *Genesis Insurance Co. v. City of Council Bluffs*, 677 F.3d 806 (8th Cir. 2012); *Selective Insurance Co. of South Carolina v. City of Paris*, 681 F. Supp. 2d 975 (C.D. Ill. 2010).

¶ 35 Appellate court judgment reversed.

¶ 36 Circuit court judgment affirmed.

¶ 37 JUSTICE NEVILLE took no part in the consideration or decision of this case.