# Illinois Official Reports

## Supreme Court

---

**Kuhn v. Owners Insurance Co., 2024 IL 129895**

---

| | |
|---|---|
| Caption in Supreme Court: | MARK KUHN *et al.*, Appellants, v. OWNERS INSURANCE COMPANY, Appellee. |
| Docket No. | 129895 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Scott Kording, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded with directions. |
| Counsel on Appeal | Terence B. Kelly, of Kraft, Wood & Kelly, LLC, and Chase T. Molchin, of Ginzkey & Molchin, LLC, both of Bloomington, and Lindsay Rakers, of Sumner Law Group LLC, of St. Louis, Missouri, for appellants.<br><br>Krysta K. Gumbiner, of Dinsmore & Shohl LLP, of Chicago, Kathryn W. Bayer, of Dinsmore & Shohl LLP, of Cincinnati, Ohio, and Conor B. Dugan, of SouthBank Legal, LLC, of Grand Rapids, Michigan, for appellees. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    The question presented in this declaratory judgment action is whether the $1 million liability limits for each of seven covered vehicles in a single multivehicle insurance policy may be aggregated or "stacked" for a total of $7 million of liability coverage for one accident, despite an "antistacking" policy provision. The McLean County circuit court answered this question in the affirmative, and the appellate court reversed. Based on the specific insurance policy at issue, we affirm the appellate court's judgment.

¶ 2                                I. BACKGROUND

¶ 3    Shortly before 9 p.m. on December 5, 2018, appellant Mark Kuhn was driving a school bus carrying the Normal West High School junior varsity girls basketball team, their coach Steven Price, and adult volunteer Charlie Crabtree. The bus was traveling west on Interstate 74 in McLean County. Traveling in the opposite direction, Ryan Hute was driving a 2010 Kenworth semitruck with an attached trailer in the course of his employment with Farrell Trucking. The semitruck crossed the center grass median of the highway, continued driving east in the westbound lanes, and struck the school bus in a head-on collision. Hute and Crabtree died as a result of the accident, and other occupants of the school bus were injured.

¶ 4    Appellee Owners Insurance Company (Owners) insured the semitruck that Hute was driving under a commercial vehicle insurance policy issued to Farrell Trucking.[1] The policy also listed Hute as a covered driver. Farrell Trucking is located in Iowa, but the parties have stipulated that the policy should be interpreted under Illinois law.

¶ 5    Mark Kuhn and Karen Kuhn brought an action against Hute's estate and entities related to Farrell Trucking.[2] They then filed this suit seeking a declaration that the $1 million liability limits in the insurance policy covering the semitruck and six other vehicles (three semitrucks and four trailers in total) could be stacked, for a combined $7 million in liability coverage. In their amended complaint, the Kuhns added as defendants the other bus passengers who were potential claimants in the underlying action (potential claimants), in order to bind them to the terms of the judgment in this suit.

¶ 6    The Kuhns and Owners filed cross-motions for summary judgment.[3] The trial court granted the Kuhns' motion for summary judgment. In a 73-page order, it ruled that the

---

[1]The trailer attached to the semitruck was not a listed vehicle in the policy.

[2]The underlying complaint alleged that Hute was employed by Jason Farrell, Farrell Trucking, and/or 3 Guys and a Bus, Inc. For purposes of this appeal, it is undisputed that the semitruck was insured under Owners' policy.

[3]Some potential claimants joined in the Kuhns' motion for summary judgment.

insurance policy was ambiguous and therefore should be construed against Owners, such that stacking of the liability limits was appropriate. The appellate court reversed the trial court's decision. 2023 IL App (4th) 220827, ¶ 71. It held that the policy's antistacking clause was unambiguous on its face and, when read together with the declarations and other policy provisions, that the antistacking clause should be enforced as written. *Id.* ¶ 70.

¶ 7    This court allowed the petition for leave to appeal filed by the Kuhns and other potential claimants. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 8                          II. INSURANCE POLICY PROVISIONS

¶ 9    Section II(A) of the policy provides in relevant part: "We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto as an auto."

¶ 10   Section II(C) of the policy states:

"C. LIMIT OF INSURANCE

We will pay damages for bodily injury, property damage and covered pollution cost or expense up to the Limit of Insurance shown in the Declarations for this coverage. Such damages shall be paid as follows:

1. When combined liability limits are shown in the Declarations, the limit shown for each accident is the total amount of coverage and the most we will pay for damages because of or arising out of bodily injury, property damages and covered pollution cost or expense in any one accident.

2. When separate bodily injury and property damage limits are shown in the Declarations:

* * *

3. The Limit of Insurance applicable to a trailer, non-motorized farm machinery or farm wagon which is connected to an auto covered by this policy shall be the limit of insurance applicable to such auto. The auto and connected trailer, non-motorized farm machinery or farm wagon are considered one auto and do not increase the Limit of Insurance.

* * *

5. The Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident or covered pollution cost or expense, regardless of the number of:

a. Covered autos;

b. Insureds;

c. Premiums paid;

d. Claims made or suits brought;

e. Persons injured; or

f. Vehicles involved in the accident."

¶ 11    The declarations pages contain an "ITEM ONE," with the named insured's information. "ITEM TWO" begins on the same page and is titled "SCHEDULE OF COVERED AUTOS AND COVERAGES." It consists of a chart listing the different types of coverages, "COVERED AUTOS SYMBOLS," the "LIMIT OF INSURANCE FOR ANY ONE ACCIDENT OR LOSS," and the premium costs for each type of coverage. The coverage for "Combined Liability" lists "$1 Million each accident." The page described appears as follows:[4]

---

**Owners**                         Page   1                                    58979 (10-16)
                                                                        Issued    12-06-2018

INSURANCE COMPANY                                    COMMERCIAL AUTO POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999                              PREFERRED PROGRAM
AGENCY   PRINS INSURANCE INC                         Endorsement Effective    11-27-2018
07-0677-00            MKT TERR 038    (712) 729-3252   **POLICY NUMBER      51-829-065-00**
ITEM ONE                                             Company Use              39-04-IA-1806
NAMED INSURED   JASON FARRELL
                JASON FARRELL TRUCKING               Company   **POLICY TERM**
                                                     Bill      12:01 a.m.    12:01 a.m.
ADDRESS      3717 210TH ST                                                to
                                                               06-22-2018    06-22-2019
             CLINTON  IA  52732-8920

Entity:   Individual
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH
YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
**ITEM TWO - SCHEDULE OF COVERED AUTOS AND COVERAGES**
This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply
only to those **autos** shown as covered **autos**.  **Autos** are shown as covered **autos** for a particular coverage by the entry of one or more
of the symbols from the COVERED AUTOS section of the Commercial Auto Policy next to the name of the coverage.

| | COVERAGES | COVERED AUTOS SYMBOLS | LIMIT OF INSURANCE FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|---|
| | Combined Liability | 7, 8, 9, 19 | $1Million each accident | $6,311.69 |
| | Uninsured/Underinsured Motorist Coverage | 7 | Uninsured Motorist - $100,000 each person/ $100,000 each accident | $27.72 |
| | | 7 | Underinsured Motorist - $100,000 each person/ $100,000 each accident | $53.31 |
| | Medical Payments | 7 | $5,000 each person | $39.27 |
| Physical Damage | Comprehensive | 7 | $250 deductible applies for each covered auto unless a deductible appears in ITEM THREE. | $2,120.34 |
| | Collision | 7 | $500 deductible applies for each covered auto unless a deductible appears in ITEM THREE. | $5,579.75 |
| | Road Trouble Service | | | No Coverage |
| | Additional Expense | | | No Coverage |
| | | | **Premium for Endorsements and Terrorism Coverage** | $201.50 |
| | | | **ESTIMATED TOTAL PREMIUM*** | $14,333.58 |

* This policy may be subject to final audit.

---

¶ 12    Another portion of the declarations is titled "ITEM THREE—SCHEDULE OF COVERED AUTOS, ADDITIONAL COVERAGES AND ENDORSEMENTS." Immediately above this title is the sentence: "This policy is amended in consideration of the additional or return premium shown below. This Declarations [*sic*] voids and replaces all previously issued Declarations bearing the same policy number and premium term." This section contains

---

[4]The numbers under "COVERED AUTOS SYMBOLS" refer to a separate table, in which number "7" stands for "Scheduled Autos Only," number "8" stands for "Hired Autos Only," number "9" stands for "Non-owned Autos Only," and number "19" stands for "Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only."

- 4 -

separate listings for each of the seven vehicles, including the premium for each vehicle, and every listing states "Combined Liability" under the heading "COVERAGES" and "$1 Million each accident" under the heading "LIMITS." The page of "ITEM THREE" containing the semitruck involved in the accident appears as follows:

OWNERS INS. CO.

Page 6

58979 (10-16)
Issued   12-06-2018

AGENCY   PRINS INSURANCE INC
07-0677-00          MKT TERR 038

Company   **POLICY NUMBER**   **51-829-065-00**
Bill      Company Use         39-04-IA-1806

NAMED INSURED   JASON FARRELL

Term  06-22-2018  to  06-22-2019

|  |  | TERRITORY | CLASS |
|---|---|---|---|
| 5.  2010 KW  T660<br>VIN: 1XKAD49X1AJ270127 |  | 048<br>Clinton County, IA |  |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $2,265.28 |  |
| Uninsured Motorist | $ 100,000 each person/$ 100,000 each accident | 9.24 |  |
| Underinsured Motorist | $ 100,000 each person/$ 100,000 each accident | 17.77 |  |
| Medical Payments | $ 5,000 each person | 13.09 |  |
| Comprehensive | ACV - $2,500 deductible | 1,117.83 |  |
| Collision | ACV - $2,500 deductible | 2,848.38 |  |
| Terrorism Coverage |  | 31.36 |  |
|  | TOTAL | $6,302.95 |  |
|  |  |  | No Charge |

Interested Parties:
   Lienholder: MAQUOKETA STATE BANK, 203 N MAIN ST, MAQUOKETA, IA 52060-2204

Additional Endorsements For This Item:  58329 (10-16)    58330 (10-16)    58402 (05-16)

ITEM DETAILS: Extra heavy truck-tractor operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Commercial Auto Plus Coverage Package applies.
Vehicle Count Factor Applies.
A 5% seat belt credit has been applied to BI and/or Med Pay premium.
Diminished Value Coverage applies.

160        0143665 A 1184

|  |  | TERRITORY | CLASS |
|---|---|---|---|
| 6.  2000 NON OWNED TRAILER<br>VIN: NON OWNED<br>Secured Interested Party Changed |  | 048<br>Clinton County, IA |  |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $78.66 |  |
| Comprehensive | ACV - $2,500 deductible | 133.85 |  |
| Collision | ACV - $2,500 deductible | 327.49 |  |
| Terrorism Coverage |  | 2.70 |  |
|  | TOTAL | $542.70 |  |
|  |  |  | No Charge |

Interested Parties:
   Lienholder: XTRA LEASE LLC, 850 66TH AVE SW, CEDAR RAPIDS, IA 52404-4709

ITEM DETAILS: Livestock trailer operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Vehicle Count Factor Applies.
Diminished Value Coverage applies.

160        0080000 1184

## III. ANALYSIS

When, as in this case, the parties file cross-motions for summary judgment, they implicitly agree that there are no genuine issues of material fact and that the dispute involves only questions of law, such that the court may decide the issues based on the record. *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087, ¶ 20. We review *de novo* the court's ruling on a motion for summary judgment. *Id.* Likewise, the construction of an insurance policy is a question of law that we review *de novo*. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14.

¶ 15    An insurance policy is a contract, so the rules governing contract interpretation also govern the interpretation of an insurance policy. *Galarza v. Direct Auto Insurance Co.*, 2023 IL 129031, ¶ 38. Our primary objective is to ascertain and give effect to the parties' intent, as expressed in the policy language. *Id.* Clear and unambiguous policy language will be enforced as written unless it conflicts with public policy. *Id.*

¶ 16    As a general rule, antistacking clauses in insurance policies do not violate public policy. *Hess*, 2020 IL 124649, ¶ 16. A reviewing court will therefore give effect to unambiguous antistacking clauses. *Id.* However, if insurance policy language is ambiguous, the court will construe it liberally in favor of coverage and against the insurer who drafted the policy. *Id.*; *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184-85 (2010). "Policy language is ambiguous if it is susceptible to more than one reasonable interpretation." *Hess*, 2020 IL 124649, ¶ 16. "Reasonableness is the key" in determining whether a provision is subject to more than one reasonable interpretation, as opposed to "whether creative possibilities can be suggested." *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993).

¶ 17    Appellants argue that, pursuant to *Bruder* and subsequent supreme court cases, insurance policies are ambiguous where the declaration pages separately list liability limits for each of the multiple vehicles insured, with the result that the policy must be construed in favor of the insured and allow the stacking of coverage.

¶ 18    The pertinent part of *Bruder* examined whether the uninsured-motorist coverage in a business auto policy should be stacked in return for separate premiums for two pickup trucks. *Id.* at 189-90. The antistacking clause stated: " 'The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury shown in the declarations for "Each Person." ' " *Id.* at 189. The provision applied " 'regardless of the number of covered autos.' " *Id.* at 194. The declarations page had separate entries for the premium paid for each pickup truck, but it listed the limit of liability of $100,000 for bodily injury for "each person" just once on the page, separate from the columns listing the vehicle information. *Id.* at 193. We stated:

> "The only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury occasioned to each person insured no matter how many vehicles are listed in the column arrangement and no matter how many premiums are paid. The representation of the limit of liability for bodily injury for each person on the declarations page is consistent with the language of the antistacking provision. It is also consistent with the language in the policy that the antistacking provision would apply 'regardless of the number of covered autos.' " *Id.* at 193-94.

¶ 19    In discussing the arrangement of information on the declarations page, we also stated:

> "Understanding the arrangement of entries in the columns is important in determining the effect of what is not there included. Specifically, the limits of liability are not set out within the column arrangement in the same manner as the page lists the premium amounts and totals. That is, there is no column for which the limit of liability for bodily injury is to be listed like a premium amount so that the $100,000 limit for each person would appear in both sentence-like lines for the pickup trucks.
>
> It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. It could easily be interpreted that an

insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded. See *Squire,* 69 Ill. 2d at 179-80 (holding that the existence of two declarations pages, both setting $10,000 limits for liability for each person, created an ambiguity permitting the aggregation of those coverage amounts)." *Id.* at 192.

The second paragraph of this quoted material, which appellants have labeled the "*Bruder dicta,*" has been the subject of much debate in the appellate court.

¶ 20    This court revisited the subject of antistacking clauses in *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11 (2005). *Hobbs* was a consolidated case in which both underlying cases involved underinsured-motorist coverage for multiple vehicles in a single policy. *Id.* at 14. We discuss only the first consolidated case, which is germane here. The antistacking clause stated:

" 'LIMIT OF LIABILITY

The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. *** This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.' " *Id.* at 18.

¶ 21    We stated that the case was similar to *Bruder* in that the antistacking clause tied the limit of liability to the limit shown on the declarations page, the declarations page listed the premiums for the two vehicles separately, the declarations page listed the relevant limit of liability only once, and the antistacking clause stated that the provision applied regardless of the number of covered vehicles. *Id.* at 21. We therefore held that the underinsured-motorist coverage in the policy could not be stacked. *Id.*

¶ 22    The appellate court in *Hobbs* had relied on two other appellate court cases, *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797 (2000), and *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655 (2002), in determining that ambiguity resulted from the policy statement " 'COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE.' " *Hobbs*, 214 Ill. 2d at 24. We disagreed with the appellate court's assessment. We stated that, although *Yates* had similar disputed language, the policy was already ambiguous because the declarations page listed the underinsured-motorist limits once for each covered vehicle. *Id.* at 25. We reiterated our remark in *Bruder* that it would not be difficult to find an ambiguity where the antistacking clause limits liability to the limit shown on the declarations page and the declarations page lists the limit of liability twice. *Id.* at 26. We circumscribed our statement by adding that, "*[i]n the absence of other qualifying language in the antistacking clause*, '[t]here would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of

the two [vehicles].' " (Emphasis added.) *Id.* at 25 (quoting *Bruder,* 156 Ill. 2d at 192). We further cautioned that our discussion "should not be construed as establishing a *per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted more than once on the declarations. Variances in policy language and, in particular, antistacking clauses, frequently require case-by-case review." *Id.* at 26 n.1.

¶ 23    In *Hall*, the other case that the appellate court in *Hobbs* cited, the policy contained an antistacking clause that the plaintiff conceded was unambiguous. *Id.* at 26 (citing *Hall*, 328 Ill. App. 3d 655). The declarations page listed separate bodily injury premiums for the two covered vehicles but listed the limit of liability only once. *Id.* The *Hall* court reasoned that the statement " 'insurance is provided where a premium is shown' " (*id.* (quoting *Hall*, 328 Ill. App. 3d at 657)) was directly contradictory to the antistacking clause, thus creating an ambiguity that permitted stacking (*id.* (citing *Hall*, 328 Ill. App. 3d at 660)). We overruled *Hall* as being wrongly decided because the disputed clause did not address the subject of stacking and could not reasonably be read to conflict with the antistacking clause. *Id.* at 27.

¶ 24    The subject of antistacking clauses arose again in this court in *Hess*, 2020 IL 124649, this time in the context of bodily injury liability limits instead of uninsured- or underinsured-motorist coverage. The clause in *Hess* provided:

" 'LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

* * *

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.' " *Id.* ¶ 23.

¶ 25    The first page of the declarations listed three covered autos and listed the bodily injury limit only once. *Id.* ¶ 6. The second declarations page listed a fourth covered vehicle and again listed the limits for bodily injury coverage. *Id.* ¶ 7. The circuit court ruled that the liability limits could be stacked four times, once for each vehicle, and the appellate court held that it could be stacked twice, based on the liability limits being listed two times. *Id.* ¶ 25. We stated that the only reasonable explanation for the liability limits appearing for a second time on the second declarations page was that the information for all four covered vehicles could not fit on one physical page. *Id.* We held that, "[w]hen read together with the declarations, *** the antistacking clause unambiguously prohibits stacking of bodily injury liability coverage." *Id.*

¶ 26    We further stated that the appellate court had improperly compared the case to *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, and *Johnson v. Davis*, 377 Ill. App. 3d 602 (2007), both of which allowed the stacking of underinsured-motorist coverage in

- 8 -

multivehicle policies. *Hess*, 2020 IL 124649, ¶ 26. We pointed out that those policies listed the liability limits separately for each covered vehicle, unlike the policy before us. *Id.*[5]

¶ 27    Addressing our prior discussion in *Bruder* and *Hobbs* of ambiguity arising from multiple liability limits, we stated that we were referring to liability limits that were listed separately for each of the covered vehicles. *Id.* ¶ 27. We repeated our statement in *Hobbs* that there was no *per se* rule that an insurance policy will be construed as being ambiguous regarding the limits of liability any time that the limits are listed more than once in the declarations. *Id.* ¶ 22. We stated that, instead, the issue must be determined on a case-by-case basis and that the declarations page must be construed together with other policy provisions rather than being read in isolation. *Id.* Based on our resolution of the case, we did not address the defendant's alternative argument that automobile liability coverage, as distinguished from uninsured- and underinsured-motorist coverage, should never be stacked as a matter of law. *Id.* ¶¶ 17, 30.

¶ 28    Returning to the instant case, we begin by examining section II. Section II(A) provides general language that Owners "will pay all sums an insured legally must pay as damages" caused by an accident involving a covered auto. Section II(C), titled "LIMIT OF INSURANCE," contains the antistacking language. Like the insurance policies discussed in other cases, it references the declarations pages, stating that Owners "will pay damages for bodily injury *** up to the Limit of Insurance shown in the Declarations for this coverage." Further:

> "When combined liability limits are shown in the Declarations, the limit shown for each accident is the total amount of coverage and the most we will pay for damages because of or arising out of bodily injury, property damages and covered pollution cost or expense in any one accident."

¶ 29    The section later continues:

> "5. The Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident or covered pollution cost or expense, regardless of the number of:
>> a. Covered autos;
>> b. Insureds;
>> c. Premiums paid;
>> d. Claims made or suits brought;
>> e. Persons injured; or
>> f. Vehicles involved in the accident."

¶ 30    Section II(C)(5) is somewhat similar to the antistacking clauses in *Hobbs* and *Hess*, but it more directly prohibits stacking by stating that the "Limit of Insurance for this coverage may

[5]Appellants argue that we distinguished *Cherry* and *Johnson* solely on the basis of the declarations pages, thus determining that the antistacking clauses in those cases were not sufficient to overcome the ambiguity created by declarations pages that listed the limits of liability separately for each of multiple autos insured. To be clear, we distinguished *Cherry*'s and *Johnson*'s declarations pages simply to explain why the appellate court erred in relying on them to stack the insurance coverage. We did not discuss or even mention the antistacking clauses in those cases, much less pass judgment on the ultimate outcomes reached.

not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident." That is, section II(C) states that the "Limit of Insurance shown in the Declarations for this coverage" may not be added to the limits of coverage that apply to other autos that the policy insures to determine the amount of coverage in a single accident, regardless of factors such as the number of covered autos and premiums paid. This prohibition against stacking is underscored by section II(C)(3), which provides that, in the particular scenario that a trailer insured by the policy is connected to an auto insured by the policy, the auto and the trailer "are considered one auto and do not increase the Limit of Insurance."

¶ 31     Appellants argue that, pursuant to the *Bruder dicta*, "the multiple listing of liability limits for each vehicle insured renders the otherwise clear anti-stacking clause in Owner's policy ambiguous." Appellants seem to take the position that, regardless of the specific antistacking language used in an insurance policy, the declarations pages alone will render the policy ambiguous if the limits of liability are listed in conjunction with each insured vehicle. However, we have repeatedly emphasized there is no "*per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted more than once on the declarations." *Hobbs*, 214 Ill. 2d at 26 n.1. We further stated in *Hobbs* that "[v]ariances in policy language *and, in particular, antistacking clauses*, frequently require case-by-case review." (Emphasis added.) *Id.* Like any contract, we construe an insurance policy in its entirety and give effect to each provision where possible. *Sanders v. Illinois Union Insurance Co.*, 2019 IL 124565, ¶ 23. Therefore, an "antistacking clause must be read in conjunction with the policy as a whole." *Hess*, 2020 IL 124649, ¶ 24; see *Hobbs*, 214 Ill. 2d at 23 (uncertainty can arise if a declarations page is read in isolation, so we must examine the complete document in interpreting an insurance policy).

¶ 32     Thus, we keep the provisions of the antistacking clause in mind as we turn to the declarations pages. "ITEM TWO" lists a "Combined Liability" of "$1 Million each accident" as the "LIMIT OF INSURANCE FOR ANY ONE ACCIDENT OR LOSS," in exchange for a premium of $6311.69. The policy does not define "Combined Liability," but its meaning can be determined by referring to sections II(C)(1) and II(C)(2). Section II(C)(1) begins with the situation of when "combined liability limits are shown in the Declarations," whereas section II(C)(2) contrasts this with when "separate bodily injury and property damage limits are shown in the Declarations." Therefore, a plain reading of the policy shows that "Combined Liability" means combined bodily injury and property damage limits. The "Combined Liability" lists a single limit of "$1 Million each accident" and a premium of $6311.69. As such, "ITEM TWO" lists the relevant liability limit of $1 million just once, which under *Bruder* and *Hobbs* would mean that the coverages could not be stacked.

¶ 33     However, "ITEM THREE" contains separate listings for each of the seven covered vehicles. The listings delineate the type of coverage, the limits of insurance for each type of coverage, and the premium charged for the coverage. The types of coverage differ among the vehicles. For example, the trailers do not have uninsured- or underinsured-motorist coverage, or "Medical Payments," and one vehicle does not have comprehensive or collision coverage. Each vehicle has a listing of "Combined Liability" coverage of "$1 Million each accident," with a corresponding premium on the same line.

¶ 34    Appellants again point to the *Bruder dicta* in arguing that declarations pages that list limits of liability separately for each of multiple insured vehicles give rise to the reasonable interpretation that the policy provides separate limits for each vehicle. However, unlike the scenario described in the *Bruder dicta*, we must consider both sections ("ITEM TWO" and "ITEM THREE") of the declarations pages. Further, as discussed, there is no bright-line rule that an insurance policy is ambiguous as to the limits of liability any time the limits are listed more than once on the declarations. Instead we must consider each case individually, construing the applicable policy as a whole.

¶ 35    Appellants additionally argue that "ITEM THREE" is the only section that we should consider in the declarations because it is an "amended" declarations sheet, in that "ITEM THREE" states: "This policy is amended in consideration of the additional or return premium shown below. This Declarations [*sic*] voids and replaces all previously issued Declarations bearing the same policy number and premium term." Appellants maintain that "ITEM THREE" amends the policy's declarations section by indicating that the insured had purchased separate $1 million combined liability limits on each of the seven vehicles listed. Appellants argue that the coverages have changed from those listed in "ITEM TWO," in that some but not all of the vehicles listed have $100,000 per person/$100,000 per accident in uninsured/underinsured-motorist coverage and $5000 per person in medical payments coverage, which is a change from "ITEM TWO," where all "Scheduled Autos" (symbol "7") are listed as having uninsured/underinsured-motorist coverage and medical payments coverage. Appellants contend that it is reasonable to interpret "ITEM THREE" as not subject to any terms in "ITEM TWO" and view it as the policy's controlling declarations.

¶ 36    Appellant's argument that "ITEM THREE" was intended to take the place of "ITEM TWO" is contradicted by the policy documents. The policy has a page that states "DESCRIPTION OF CHANGES EFFECTIVE 11-27-2018" and states that a lienholder was added for one of the trailers. "ITEM TWO" and "ITEM THREE" both list a policy term of June 22, 2018, to June 22, 2019, and an endorsement effective date of "11-27-2018." Accordingly, both "ITEM TWO" and "ITEM THREE" were active portions of the policy.

¶ 37    Appellants additionally argue that "ITEM THREE" lists "Combined Liability" in the singular, whereas the antistacking provision refers to "combined liability limit*s*" (emphasis added) in the plural, such that the individual liability amounts can be "combined" or stacked to constitute "combined liability limits." The trial court engaged in a similar analysis. We note that "ITEM THREE" lists "Combined Liability" under the heading "COVERAGES" and "$1 Million each accident" under the heading "LIMITS," such that "ITEM THREE" also references "Combined Liability" limits. More importantly, as discussed, a plain reading of the policy illustrates that "Combined Liability" means combined bodily injury and property damage limits. See also *Hess*, 2020 IL 124649, ¶ 16 (we "will not strain to find ambiguity in an insurance policy where none exists" (internal quotation marks omitted)); *Hobbs*, 214 Ill. 2d at 31 ("We will not *** 'torture ordinary words until they confess to ambiguity.' " (quoting *Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999))).

¶ 38    Taking a wide-angled view of the declarations pages, the only logical and reasonable interpretation is that "ITEM THREE" provides a more specific breakdown of the information summarized in a chart in "ITEM TWO," including the differing coverages applicable to each

vehicle and the corresponding premium for each vehicle. As the coverages varied greatly, it was necessary for Owners to provide the information over multiple pages. Significantly, the distinct premium amounts listed individually in "ITEM THREE" for "Combined Liability" add up to the same $6311.69 total for "Combined Liability" in "ITEM TWO," which clearly states a $1 million per accident maximum just once. The fact that the total premium amounts are identical indicates that both sections are intended to provide the same coverage.

¶ 39 It is true that "ITEM THREE" lists a combined liability limit of "$1 Million each accident" for each vehicle, but this may be viewed as consistent with the "ITEM TWO" combined liability limit of "$1 Million each accident." The antistacking clause likewise ties the maximum liability to "the limit shown for each accident." Moreover, when the declarations pages are considered in light of the antistacking provision, including the language that the "Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident" regardless of the number of covered autos, it is clear that the limits may not be aggregated. In other words, the insurance policy as a whole is subject to only one reasonable interpretation, which unambiguously provides a $1 million per accident liability limit and prohibits stacking the liability limits of each insured vehicle.

¶ 40 Owners additionally argues that, unlike uninsured- and underinsured-motorist coverage, liability insurance by its nature cannot be stacked. Owners did not raise this issue in the trial court, and as appellants highlight, in the appellate court Owners stated in its reply brief that, "[u]nlike the insurer in *Hess*, Owners does not ask this Court to adopt a *per se* rule that primary liability limits can never be stacked." Regardless of whether Owners waived the argument, we do not consider whether the *per se* rule is warranted because, as in *Hess,* 2020 IL 124649, ¶ 30, we have determined that the policy as a whole clearly shows that the parties' intent was not to allow aggregation of the limits of liability coverage for the individual vehicles insured.

¶ 41                                    IV. CONCLUSION
¶ 42 For the reasons stated, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court and remanded with directions to enter summary judgment for Owners.

¶ 43 Appellate court judgment affirmed.
¶ 44 Circuit court judgment reversed.
¶ 45 Cause remanded with directions.