In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 14-3341

EDWARD T. JOYCE & ASSOCIATES, P.C.,

*Plaintiff-Appellant*,

*v.*

PROFESSIONALS DIRECT INSURANCE
COMPANY,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CV 2475 — **Charles R. Norgle**, *Judge*.

---

ARGUED APRIL 16, 2015 — DECIDED MARCH 21, 2016

---

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. The Illinois law firm of Edward T. Joyce & Associates, P.C., purchased professional-liability insurance from Professionals Direct Insurance Company, a Michigan-based insurer. In 2007 the Joyce firm won a large damages award for a class of securities-fraud plaintiffs and hired another law firm to sue to collect the money from the

defendant's insurers. Some of the class members thought the
Joyce firm should have handled this aspect of the litigation
itself under the terms of its contingency-fee agreement. The
class members took the firm to arbitration over the extra fees
incurred in the satellite collection litigation.

Professionals Direct paid for the Joyce firm's defense in
the arbitration. But when the arbitrator found for the clients
and ordered the firm to reimburse some of the fees they had
paid, the insurer refused the firm's demand for indemnifica-
tion. The Joyce firm initiated coverage litigation in state
court, which the insurer promptly removed to federal court.
Ruling on cross-motions for summary judgment, the district
judge sided with the insurer, concluding that the arbitration
award was a "sanction" under the insurance policy's exclu-
sion (o), which excludes coverage for "fines, sanctions,
penalties, punitive damages or any damages resulting from
the multiplication of compensatory damages."

We affirm, though on a different rationale. The arbitra-
tion award was not functionally a sanction, so exclusion (o)
does not apply. But another provision in the policy excludes
"claim[s] for legal fees, costs or disbursements paid or owed
to you." Because the arbitration award adjusted the attor-
ney's fees owed to the firm in the underlying securities-fraud
class action, the "legal fees" exclusion applies.

## I. Background

Professionals Direct issued a professional-liability insur-
ance policy to the Joyce firm promising to pay "all sums
which you [the firm] become legally obligated to pay as
**damages** because of any **claim** or **claims** first made against

you."[1] The policy defines "claim" as "a demand or suit for money or services you receive, including any arbitration proceedings." Eligible claims are those "aris[ing] out of the rendering of or the failure to render **professional services**." And "professional services" include "services you [the Joyce firm] render in a lawyer-client relationship as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver, executor, guardian, trustee, or in any similar fiduciary capacity."

"Damages" are defined as "monetary judgments, awards or settlements *unless otherwise excluded*." (Emphasis added.) To that end, the policy lists 27 exclusions, two of which are relevant here. Exclusion (o) excludes coverage for "any **claim** for fines, sanctions, penalties, punitive **damages** or any **damages** resulting from the multiplication of compensatory **damages**." Exclusion (p) excludes coverage for "any claim for legal fees, costs or disbursements paid or owed to you."

## A. The Securities-Fraud Class Action

In 2002 a class of plaintiffs retained the Joyce firm to prosecute a securities-fraud action against EPS Solutions Corporation and Enterprise Profit Solutions Corporation (collectively, "EPS"). Under the retainer agreement, the Joyce firm would receive a $200,000 flat fee and 25% of any award or settlement, plus reimbursement of costs. The agreement permitted the Joyce firm to retain local counsel outside Illinois if the firm deemed such assistance necessary, with

---

[1] Bolded words appear as they do in the policy and are terms specially defined in section (D) of the policy.

any resulting third-party legal fees to be treated as costs under the agreement.

In 2007 the Joyce firm won a substantial arbitration award against EPS. By that point, however, EPS had become insolvent, and its insurers were the only source of funding to collect on the award.

This is where the dispute between the firm and its clients arose. The Joyce firm thought it had fully satisfied its obligations under the terms of the original retainer agreement by securing the arbitration award. The firm recommended the retention of Morgan, Lewis & Bockius LLP, a California law firm, to handle the collection litigation against EPS's insurers. The clients, however—or at least a large subset of the class that later pursued a claim against the Joyce firm—thought the firm should have continued to represent them under the terms of the original retainer agreement.

Regardless, the Joyce firm arranged for Morgan Lewis and later Reed Smith LLP to pursue the insurance litigation. Because of its "intimate knowledge of the facts and legal theories," the Joyce firm assisted in the litigation on an hourly-fee basis, with payment deferred until and only if there was an actual recovery. The case ultimately settled when EPS's insurers agreed to pay $8.6 million.

## B. The Arbitration Demand by the Class Members

In January 2011 Walter Duemer, a plaintiff in the securities-fraud class action, filed a demand for arbitration against the Joyce firm on behalf of roughly 90% of his fellow plaintiffs. He alleged claims for breach of fiduciary duty, wrongful conversion of client trust funds, and breach of contract. The claims centered on the Joyce firm's retention of the

Morgan Lewis and Reed Smith firms to handle the satellite litigation against EPS's insurers.[2] The Joyce firm denied any wrongdoing and retained counsel to defend it in the arbitration, forwarding counsel's invoices to Professional Direct for payment. The insurer agreed to pay for the firm's defense under a reservation of rights and paid the invoices as they were submitted. (There were two exceptions, which we'll discuss later.)

The arbitrator rejected the conversion and breach-of-contract claims but found the Joyce firm liable for breach of fiduciary duty in the manner in which it had arranged for the two outside firms to handle the satellite litigation. More specifically, the arbitrator found that the Joyce firm did not make "up front full disclosure about the change in legal representation" and that the new fee arrangement "was presented [to the clients] as already accomplished," suggesting "an element of undue influence about the purported negotiation of a new fee agreement."

As a remedy, the arbitrator sought to unwind some of the additional attorney's fees incurred by the Duemer claimants in the satellite litigation. The arbitrator ordered the Joyce firm to remit the $405,674.87 in fees it had charged for consultative work with Morgan Lewis and Reed Smith. And because the original retainer agreement had called for a 75/25 client/attorney split of any recovery yet the clients had footed the entire bill for the satellite litigation, the arbitrator

---

[2] The arbitration demand also challenged the acceptance of a settlement offer of $8.6 million—$400,000 below the $9 million threshold authorized by the plaintiffs. This claim was not part of the arbitrator's final award and is immaterial to this appeal.

also ordered the Joyce firm to pay 25% of the fees charged by Morgan Lewis and Reed Smith. This added $150,127.15 to the award. Finally, the arbitrator ordered the firm to pay $72,725.45 to offset the costs incurred in the arbitration.

The Joyce firm unsuccessfully challenged the arbitration award in Illinois state court on grounds unrelated to this appeal. The firm was thus on the hook for $628,527.47. At this point Professionals Direct balked and refused to pay the award, relying on exclusions (o) and (p) in the policy (among other policy defenses).

The Joyce firm filed suit in state court seeking a declaration that the insurer had breached its duty to indemnify. Professionals Direct removed the action to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332. On cross-motions for summary judgment, the district court honed in on the arbitrator's use of the word "sanction" to describe the final award against the Joyce firm. Since "claims for … sanctions" are expressly excluded from coverage under exclusion (o) of the policy, the judge held that the insurer owed no indemnification duty and entered summary judgment for Professionals Direct. This appeal by the Joyce firm followed.

## II. Discussion

The primary question in this case is how to classify the arbitration award won by the Duemer claimants: Is it a sanction, the return of disputed fees, or simply damages? If the award qualifies as a sanction, then exclusion (o) knocks out coverage. If the award is an adjustment of disputed legal fees, then exclusion (p) applies and the result is the same. If

the arbitrator awarded ordinary compensatory damages, then Professionals Direct may be required to pay.

We review de novo the district court's ruling on cross-motions for summary judgment. *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015). Because this case is in federal court under diversity jurisdiction, Illinois substantive law controls.

## A. Estoppel

As a threshold matter, the Joyce firm asserts that Professional Direct is estopped from relying on any policy exclusions because it reneged on its duty to defend in the arbitration. Under Illinois law "an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999). A breach of the duty to defend estops the insurer from raising policy defenses to coverage. *Id*.

The district judge declined to address the estoppel argument because it was underdeveloped and therefore waived. The Joyce firm challenges that conclusion on appeal.

We don't need to address waiver because the estoppel argument is so obviously meritless. An insurance company has two options when an insured requests a defense and the insurer disputes coverage: The insurer can "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id*. Professionals Direct elected the first option. The Joyce firm had retained counsel of its choosing for the arbitration, and under a reservation of

rights, Professionals Direct agreed to reimburse defense costs. It followed through on this reimbursement promise.

The Joyce firm's estoppel argument rests entirely on the timing of two of the reimbursement payments. The firm asserts that after the arbitrator issued his final award, Professionals Direct claimed it had no further responsibility for defense costs and left two outstanding invoices unpaid. Multiple phone calls and e-mails followed, and the firm threatened litigation. Professionals Direct then paid the two outstanding invoices, belatedly, a few weeks later.

The Joyce firm contends that this brief delay in payment amounts to a breach of the duty to defend. There's no support for this argument. To the contrary, in *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co.*, 941 N.E.2d 291 (Ill. App. Ct. 2010), the Illinois Appellate Court expressly declined to find a breach of an insurer's duty to defend based solely on "the amount of time between the insured's submission of expenses … and its subsequent receipt of reimbursement," *id.* at 300. So even if properly preserved, the estoppel argument plainly fails. Because there was no failure to defend, Professionals Direct is not estopped from raising its policy defenses to coverage.

## B. Exclusion (o)

As we've explained, exclusion (o) knocks out coverage for "any claim for fines, sanctions, penalties, punitive damages or any damages resulting from the multiplication of compensatory damages." The district judge classified the arbitration award as a "sanction" and thus concluded that exclusion (o) applies. The judge's reasoning rests heavily on the language used by the Illinois courts in their rulings

rejecting the Joyce firm's challenge to the arbitration award. Because the state courts occasionally used the word "sanction" to describe the award, the judge evidently thought himself bound by that label.

But the character of the award was not at issue in the state-court proceedings, which focused narrowly on whether the dispute was subject to arbitration and whether the arbitrator exceeded his authority. It's true that the Illinois Appellate Court's decision uses the word "sanctions" three times—each time closely mirroring language found in the arbitrator's award. *Duemer v. Edward T. Joyce & Assocs., P.C.*, 995 N.E.2d 321, 326 (Ill. App. Ct. 2013). But this perfunctory repetition of the arbitrator's terminology doesn't determine the proper characterization of the award.

Nor does the arbitrator's occasional use of the word "sanction" conclusively resolve the matter. Indeed, the arbitrator used a bevy of different terms to describe the award, including "damages," "disgorgement," the "equitable result," "remedy," and the "final award" (among other terms). In the end, what the arbitrator called the award is less important than what was actually alleged and proved, what was awarded, and why. *See Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 842 (Ill. App. Ct. 2010) (explaining that Illinois courts "compare the language of the policy with the facts alleged in the complaint, rather than examine whether the client has pled any particular theory of relief").

Exclusion (o) lists "sanctions" alongside "fines," "penalties," "punitive **damages,**" and "**damages** resulting from the multiplication of compensatory **damages**"—all terms that describe *penalties* rather than compensatory remedies. The

arbitration award, on the other hand, is crafted as a remedy for the Joyce firm's breach of fiduciary duty in connection with its handling of the retention of the outside firms for the collection litigation against EPS's insurers. The arbitrator sought to make the clients whole for a portion of the extra fees they incurred in the satellite litigation.

To be sure, the arbitrator rooted his holding in part on an ethics rule that carries the threat of sanctions. Specifically, he noted that "the Joyce law firm violated Rule 1.5c of the 1990 Illinois Rules of Professional Conduct by entering into a verbal agreement for a contingent fee engagement, even though this was a contingent hourly fee and not your standard 'percentage of recovery' contingent fee agreement." But the power to issue sanctions for violation of the Rules of Professional Conduct belongs exclusively to the Illinois Supreme Court and to any inferior courts acting with its blessing. *Lustig v. Horn*, 732 N.E.2d 613, 620 (Ill. App. Ct. 2000) ("Courts other than the supreme court may adjudicate matters touching on attorney discipline only when acting as agents of the supreme court upon direct order of that court. … [A] denial of attorney['s] … fees, imposed solely as a sanction for unprofessional conduct on his part, would constitute an impermissible infringement on the exclusive power of the supreme court … to adjudicate disciplinary matters."). This narrow aspect of the arbitrator's decision doesn't determine the character of the award.

The arbitrator used a variety of different terms to describe the award to the Duemer claimants, but the label ultimately doesn't matter. Because the award is functionally and in substance a remedy for the firm's fiduciary breach— and not a sanction—exclusion (o) does not apply.

**C. Exclusion (p)**

The stronger argument against coverage is that the arbitrator's award falls within exclusion (p), which excludes coverage for "any claim for legal fees … owed to" the firm. The request for relief in the arbitration demand fits squarely within this exclusion. The Duemer claimants sought "*relief for legal fees* wrongfully collected under Contingency Fee Agreements signed by each of Claimants and Respondent in connection with Respondent's agreement to provide legal services to investigate and prosecute any and all claims which Claimants might have in connection with the purchase of EPS stock." (Emphasis added.) This straightforward request grows a bit murkier in the "[p]rayer" for relief, which more broadly asks for "[a]ctual damages as determined by the Arbitrator." Still, the award fashioned by the arbitrator adjusted the legal fees recovered by the Joyce firm in the underlying securities-fraud action. That brings exclusion (p) into play.

Recall that the arbitration award had three components: (1) $405,674.87 to be remitted from the Joyce firm to the Duemer claimants for the hourly fees they paid to the firm for its consultancy with Morgan Lewis and Reed Smith; (2) $150,127.15 from the Joyce firm to offset 25% of the legal fees paid by the claimants directly to Morgan Lewis and Reed Smith; and (3) $72,725.45 to cover arbitration costs. The costs are not at issue here.

The first component of the award straightforwardly qualifies as a "claim for legal fees … paid or owed to [the firm]" within the meaning of exclusion (p) because the claimants were seeking and received remittance of fees they had paid

directly to the Joyce firm. This part of the award is plainly excluded from coverage.

The second component of the award is somewhat more difficult to classify. It isn't *directly* an order for reimbursement of legal fees paid *to* the Joyce firm. After all, the Duemer claimants had paid the $150,127.15 *to the two outside law firms*. But substance is what matters here, and in substance this part of the arbitrator's award reduced the fees the Joyce firm was entitled to recover from the proceeds of the settlement with EPS's insurers. In other words, the arbitrator adjusted the legal fees owed to the firm for its work in the underlying securities-fraud arbitration, lopping off an amount equal to its share of the fees the Duemer claimants paid to the two outside firms. So although it's a closer question, we conclude that this part of the award, too, falls within exclusion (p) and is excluded from coverage.[3]

---

[3] Professionals Direct also argues that the arbitration award falls outside the basic grant of coverage in the policy because the award did not "arise out of the rendering of or the failure to render **professional services.**" That strikes us as a stretch. The arbitrator found the Joyce firm liable for breach of fiduciary duty arising directly out of the attorney-client relationship with the plaintiff class. Professionals Direct cites *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833 (Ill. App. Ct. 2010), but that case is distinguishable; it involved a pure billing dispute that arose *after* litigation concluded and the attorney-client relationship ended.

Professionals Direct also argues that the second component of the arbitration award—the order that the firm reimburse the Duemer claimants for 25% of the fees paid to the two outside firms—is uninsurable restitution under Illinois law. *See Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund v. Five Star Managers, LLC*, 735 N.E.2d 679 (Ill. App. Ct. 2000) (explaining that "disgorgement or restitution of fees do not

Accordingly, although we part company with the district court on which of the two exclusions applies, we agree that the arbitration award is excluded from the policy's coverage and Professionals Direct owes no duty to indemnify.

AFFIRMED.

---

constitute insurable damages … as a matter of Illinois law"). We don't need to address this argument because we've already concluded that this part of the award amounts to a claim for legal fees and is therefore excluded from coverage by exclusion (p).