In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 24-1524

CITIZENS INSURANCE COMPANY
OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MULLINS FOOD PRODUCTS, INC.,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-01334 — **Jorge L. Alonso**, *Judge.*

───────────────

ARGUED OCTOBER 28, 2024 — DECIDED MAY 2, 2025

───────────────

Before ROVNER, BRENNAN, and KOLAR, *Circuit Judges.*

ROVNER, *Circuit Judge.* This is yet another of the many in-surance coverage disputes presenting the interplay between claims against an insured for violations of Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, and various exclusions in the insured's commercial liability insur-ance policy. The insured in this case, defendant-appellant Mullins Food Products, Inc. ("Mullins") was sued in Illinois

state court for violating BIPA. Mullins tendered defense of the suit to its liability insurer, Citizens Insurance Company of America ("Citizens"), but Citizens declined to defend Mullins. Instead, Citizens filed this federal suit seeking a declaratory judgment that it has no duty to defend or indemnify Mullins based on two different exclusions in the commercial liability insurance policies Citizens issued to Mullins in 2015, 2016, and 2017. While this suit was pending, Mullins settled the state-court action. The district court ultimately agreed with Citizens that the policy exclusions for the Access Or Disclosure Of Confidential Or Personal Information (the "Access or Disclosure" exclusion) and the Recording And Distribution Of Material Or Information In Violation Of Law (the "Statutory Violations Exclusion") relieved Citizens of the duty to defend or indemnify Mullins. *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 719 F. Supp. 3d 822 (N.D. Ill. 2024); R. 98.

We vacate and remand for further proceedings. We conclude that the Access or Disclosure Exclusion, found only in the 2016 and 2017 policies issued to Mullins, bars coverage for BIPA claims, but the Statutory Violation Exclusion, found in all three of the policies, does not. Assuming that Mullins complied with the duty to provide notice of the state-court action to Citizens "as soon as practicable"—a matter that remains to be decided on remand—Citizens will have been obliged to defend and indemnify Mullins in the state litigation pursuant to the 2015 policy and will be liable to reimburse Mullins for its fees and costs in defending that action.

## I.

As relevant here, BIPA imposes restrictions on how a private employer may collect, retain, and disclose an individual's biometric identifiers, including fingerprints, retina or

iris scans, voiceprints, and scans of hand or face geometry. Among other requirements, an employer must obtain a worker's written consent to collection of his biometric identifiers, may not distribute such data without the employee's consent, and must have a written plan regarding the retention and elimination of such data. 740 ILCS 14/15; *see Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 991–93 (7th Cir. 2023).

Mullins is a food ingredient manufacturer with a plant in Broadview, Illinois, employing 503 individuals. In 2018, Mullins was acquired by Newly Wed Foods, Inc., an international firm which has some 25 to 30 plants worldwide; Newly Wed is headquartered in Chicago.

Mullins scanned its employees' fingerprints in order to help monitor and manage its workers' time on the job. Mullins in turn allegedly disseminated electronic information derived from scanning its employees' biometric identifiers to third-party vendors for timekeeping, data storage, and payroll purposes. In contravention of BIPA, Mullins allegedly did not formally inform its employees that it was collecting and disseminating their biometric identifiers, it did not obtain their written consent to do so, and it did not draft and publish a policy regarding how such biometric information would be collected, used, stored, or disseminated.

In February 2021, Ricardo Galan, a former Mullins employee, filed a putative class action against Mullins in the Circuit Court of Cook County seeking damages for the company's BIPA violations. Not until January 2022 was Citizens, Mullins' commercial liability insurer, given notice of a claim under the terms of the insurance policies in force during the relevant time period.

In March 2022, Citizens filed this action seeking a declaration that it has no duty to defend or indemnify Mullins against the *Galan* lawsuit. Mullins in turn filed an answer and counterclaim seeking a contrary declaration. Count II of Mullins' counterclaim alleges that Citizens breached the insurance policies by not providing a defense for Mullins in the *Galan* lawsuit and seeks an award of the costs and attorney's fees it bore in defending the suit on its own. Mullins settled with the *Galan* plaintiffs in 2024, so its fees and costs presumably are now a fixed number. *See Galan v. Mullins Food Prods., Inc.*, No. 2021-CH-00898, Order Granting Final Approval to Class Action Settlement and Final Judgment (Cir. Ct. Cook Cnty. Oct. 2, 2024), reproduced at https://mullinsbipasettlement.com/media/5062204/mlgl_order_granting_final_approval_to_class_action_settlement_and_final_judgment.pdf [https://perma.cc/XQ9E-MDKF] (visited May 2, 2025).

There are three Citizens insurance policies at issue in this case, each effective for a period of one year beginning on March 24; the first became effective on March 24, 2015, and the last expired on March 24, 2018. For the sake of simplicity, we will refer to these as the 2015, 2016, and 2017 policies.

"Coverage B" in each of the three policies purported to give Mullins liability coverage for a "personal and advertising injury" (R. 1-1 at 167, 403, 686) which was expressly defined to include, among other things, "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" (R. 1-1 at 175, 412, 695).[1] Thus, in the absence of an

---

[1] Also covered as personal and advertising injuries are injuries arising out of false arrest, detention, or imprisonment; malicious prosecution; wrongful eviction from a personal residence by or on behalf of a landlord;

(continued)

applicable exclusion, the policies would provide coverage for the injuries alleged in the *Galan* lawsuit, as BIPA violations are, essentially, privacy violations. *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 49. Citizens would therefore have a duty to defend Mullins in the *Galan* litigation.

However, each of the three policies also includes one or more exclusions that, in Citizens' view, foreclose coverage of the claims made in the *Galan* litigation and relieve it of the duty to provide Mullins with a defense.

The Access or Disclosure Exclusion bars coverage for a personal and advertising injury

> arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

R. 1-1 at 421, 712. Again, the Access or Disclosure Exclusion was included (by endorsement) only in the 2016 and 2017 polices; it was not included in the 2015 policy.

---

oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; use of another's advertising idea in an advertisement; and infringing upon another's copyright, trade dress, or slogan in an advertisement. R. 1-1 at 175, 412, 695.

As noted, the Statutory Violations Exclusion was included in all three policies. This is a somewhat more complex exclusion; it excludes coverage for:

> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

R. 1-1 at 178, 404, 687. Citizens reads this exclusion to unambiguously exclude coverage for the BIPA claims asserted in *Galan*, in that such claims involve the collecting, recording, and dissemination of a person's biometric "information."

Our decision in *Wynndalco*, however, found a version of this exclusion similar (though not identical) to the one

presented in this case not to foreclose the insurer's duty to defend its insured against a BIPA claim.[2] We acknowledged that although it was possible to read the catchall language in isolation to include BIPA claims, as well as a wide range of other statutory claims, such a reading would also nullify or "swallow" a substantial portion of the coverage that the policy purported to provide for personal and advertising injuries. 70 F.4th at 997–98. It was not possible to avoid that problem by construing the exclusion to reach only statutory causes of action relating to privacy: There was no hint of privacy anywhere in the language of the exclusion, and to narrow the exclusion in this way would presume that the exclusion's otherwise sweeping language meant something other than what it said. *Id.* at 998–99. For that reason, we treated the catchall exclusion as ambiguous. *Id.* at 999. Resort to the doctrines of *ejusdem generis* and *noscitur a sociis* did not resolve the ambiguity, as there was no readily discernible theme among the three statutes cited immediately prior to the catchall—including Citizens' posited theme of privacy—that would suggest

---

[2] There are two differences between the exclusion at issue in *Wynndalco* and the one presented in this case. First, the catchall provision of the *Wynndalco* exclusion lacked the "other than" clause referencing the statutes cited by name immediately prior to the catchall provision; in *Wynndalco*, the catchall simply referenced *"[a]ny other* laws, statutes, ordinances, or regulations, that address, prohibit or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." 70 F.4th at 993 (emphasis added). Second, whereas the heading of the exclusion in this case refers to the "Recording and Distribution of Material or Information in Violation of Law," the exclusion in *Wynndalco* referred more generically and broadly to the "Distribution of Material in Violation of Statutes." *See id.* Apart from those differences, the two catchall provisions are materially identical.

how the scope of the broad catchall provision could be construed in a way that was consistent with the terms of the overall exclusion and yet did not eliminate a broad swath of the coverage that the policy otherwise ostensibly provided for personal and advertising injuries. *Id.* at 1000–04. We therefore construed the provision in the insured's favor and held that Citizens had a duty to defend the insured. *Id.* at 1004–05.

Initially, the district court in this case rejected Citizens' contention on summary judgment that the Access or Disclosure Exclusion and the Statutory Violations Exclusion relieved it of the duty to defend Mullins. *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 684 F. Supp. 3d 762 (N.D. Ill. 2023); R. 61. The court deemed our *Wynndalco* decision to "directly control[ ]" as to the Statutory Violations Exclusion and found that exclusion to be ambiguous. R. 61 at 15. The court likewise found the Access or Disclosure Exclusion (which was not addressed in *Wynndalco*) to be ambiguous. R. 16 at 16–22. As to the question of whether Mullins had provided timely notice of the *Galan* lawsuit to Citizens, the court concluded that there were disputes of material fact that precluded summary judgment. R. 16 at 26–28. Resolution of Citizens' duty to defend Mullin in the *Galan* litigation would thus have to wait until a trial could be conducted on the notice issue. However, the court did enter summary judgment against Mullins on its counterclaim for breach of contract, reasoning that Citizens' timely commencement of this declaratory judgment action precluded a finding that Citizens had breached its duty to defend Mullins even if the court were ultimately to conclude that Citizens owed Mullins a defense in the *Galan* suit. R. 61 at 29–31.

However, based on the Illinois Appellate Court's intervening decision in *Nat'l Fire Ins. Co. of Hartford v. Visual Pak Co.*, 2023 IL App (1st) 221160, *app. denied*, 238 N.E.3d 303 (Ill. 2024), the district court subsequently reconsidered its decision and granted summary judgment to Citizens, concluding that both the Statutory Violations Exclusion and the Access or Disclosure Exclusion barred coverage for BIPA claims and thus relieved Citizens of the obligation to defend Mullins. R. 98.

In *Visual Pak*, the Illinois Appellate Court disagreed with our application of the "swallowing" principle in *Wynndalco*. That principle only applies, the court said, when an exclusion truly eliminates *all* of the coverage provided elsewhere in the policy. *Id.* ¶¶ 84, 96. Thus, if one reads the catchall provision literally and broadly to include violations of statutory privacy protections, the result would be to bar coverage for BIPA claims, yes, but it would still leave coverage in place for common law violations arising from an invasion of one's privacy. *Id.* ¶¶ 99–100; *see also Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1249 (7th Cir. 2021) (Hamilton, J., concurring) (noting that injuries in cases alleging BIPA violations "would be comparable to injuries in invasion-of-privacy and unjust enrichment that the law has long recognized"). The same could be said for other types of personal and advertising injuries for which the policy provided coverage: statutory violations might be excluded from coverage by dint of a plain-text reading of the catchall, but violations of common law rights would remain covered. 2023 Ill. App. (1st) 221160 ¶¶ 104–05. Thus, a broad reading of the exclusion would not "swallow" the coverage provided for in the personal and advertising injury provision, and thus did not render the policy ambiguous. And although the court appeared to acknowledge that *Wynndalco* might possibly be right in positing that some forms of

personal and advertising injuries, like copyright violations, could *only* be redressable through statutory causes of actions (with no common law counterparts)—the court observed that those types of injuries were not related to privacy and were not at issue in the case before it and as such did not need to be considered. *Id.* ¶¶ 112–121.

*Visual Pak* went on to reason that there was also a more focused understanding of the catchall that would nonetheless bar coverage for BIPA claims. The insurer in *Visual Pak*, like the insurer in *Wynndalco*, argued that the common thread among the three statutes cited by name immediately preceding the catchall is privacy, such that the catchall itself should be construed to reach only injuries arising out of statutory privacy violations. We, of course, had rejected that argument in *Wynndalco*, whether as a plausible narrowing construction of the Statutory Violations Exclusion in order to avoid an ambiguity or as an application of *ejusdem generis* to resolve such ambiguity. 70 F.4th at 998–99, 1002–04. We noted, *inter alia*, that reading a policy gloss into the exclusion required a fairly nuanced analysis and understanding of the various statutes cited by name in the exclusion that would be beyond the comprehension of the ordinary commercial insured. *Id.* at 1003–04. Not so, said the court in *Visual Pak*. "[W]e [do not] deem it especially sophisticated for an insured purchasing this business liability insurance to understand that these groups of statutes touch on various aspects of an individual's personal privacy, though not precisely in the same way." 2023 Ill. App. (1st) 221160 ¶ 70. The *Visual Pak* court went on to note that the heading of the exclusion there referred specifically to the "*Recording* and Distribution of Material or Information in Violation of Law" (emphasis added) rather than simply to the "Distribution of Material in Violation of Statutes" as was the case

in *Wynndalco*. *Id.* ¶ 71. "That is no small difference" in terms of signaling that the exclusion was focused on privacy. ¶ 72. The court added that some terms in the catchall provision of the exclusion—including in particular the "disposal, collecting, and recording" of material or information—"only make sense in the context of the secrecy element of privacy." *Id.* ¶ 73. Thus, in view of what the court found to be the shared thread of privacy among the three statutes cited by name in the exclusion, the heading of the exclusion, and the terms used in the catchall provision of the exclusion, it was "not unreasonable at all" to construe the catchall to reach privacy-related statutes like BIPA. *Id.* ¶ 73.

Following *Visual Pak*'s lead, the district court on reconsideration concluded that the catchall provision of the Statutory Violations Exclusion should be understood to exclude coverage for injuries arising from BIPA violations. First, the court noted that our own decision in *Wynndalco* and the state court's decision in *Visual Pak* agreed that a literal, plain-text reading of the catchall provision would reach BIPA violations. R. 98 at 17. Second, as in *Visual Pak*, the heading of the exclusion in this case—"Recording And Distribution Of Material Or Information In Violation Of Law"—is worded in such a way as to suggest that the exclusion overall is aimed at privacy-related violations. R. 98 at 17. Third, reading the exclusion, including the catchall, as being privacy-focused obviates the need to resort to *ejusdem generis* or other interpretive canons. R. 98 at 18. Fourth, by limiting the exclusion to violations of the named statutes and other privacy-related violations, one avoids the potential "swallowing" problem that we referenced in *Wynndalco*. R. 98 at 18–20.

The court relied on *Visual Pak* to further conclude that the Access or Disclosure Exclusion likewise bars coverage for injuries arising from BIPA violations. Looking a second time at the Access or Disclosure Exclusion in light of *Visual Pak*, the court concluded that this exclusion unambiguously excludes coverage for gathering or disclosing an individual's biometric identifiers or information. The exclusion reaches injuries arising from "any access to or disclosure of any person's … confidential or personal information … ." The policies do not define "personal information," but "it takes no stretch of the imagination to find that it would include information typically kept private." R. 98 at 22. Although the subsequent list of examples in the policy omits mention of fingerprints or other biometric information, such information, like one's financial and health information, is another aspect of one's private data and information. R. 98 at 23. Finally, reading the Access or Disclosure Exclusion to reach injuries resulting from BIPA violations would again not present the "swallowing" problem with which we were concerned in *Wynndalco*. R. 98 at 28.

Having now concluded that both of the two foregoing exclusions reached BIPA claims, the district court found that Citizens had no duty to defend or indemnify Mullins in the *Galan* litigation. The court vacated its prior ruling on the question of whether Mullins had given Citizens timely notice of the *Galan* suit (which found that disputes of material fact precluded summary judgment), given that its new ruling as to the exclusions rendered the notice question moot. R. 98 at 28. The court declined to reconsider its prior ruling against Mullins on its counterclaim for breach of contract. R. 98 at 28–29.

After the district court's reconsideration decision in favor of Citizens, this court in *Thermoflex Waukegan, LLC v. Mitsui*

*Sumitomo Ins. USA, Inc.*, 102 F.4th 438, 440–41 (7th Cir. 2024), held that an Access or Disclosure Exclusion identical to the one in the Citizens policy unambiguously excluded coverage for BIPA claims. However, the court also found that an exclusion quite similar to the Statutory Violations Exclusion at issue in *Visual Pak* and in this case did not apply to BIPA claims. *Id.* at 442. In reaching that conclusion, the court set aside the Illinois Appellate Court's *Visual Pak* decision and this court's *Wynndalco* decision and instead relied on the Illinois Supreme Court's decision in *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, to conclude that the Statutory Violations Exclusion did not unambiguously exclude coverage for BIPA claims. *Thermoflex*, 102 F.4th at 441–42.

Mullins now appeals. It argues first and principally that we should certify to the Illinois Supreme Court the question of whether the two policy exclusions at issue in this case exclude coverage for BIPA claims, given the conflicting decisions among federal and state courts as to the proper understanding of these exclusions. Alternatively, Mullins urges that we follow *Wynndalco* and *Thermoflex* to find the Statutory Violations Exclusion here to be ambiguous. As to the Access or Disclosure Exclusion, Mullins acknowledges that *Thermoflex* finds this provision to unambiguously exclude coverage for BIPA claims, but Mullins criticizes the logic of that decision and suggests that we overrule *Thermoflex* in that respect.

For its part, Citizens urges that we follow *Thermoflex* and hold that the Access or Disclosure Exclusion is clear and excludes coverage for BIPA claims. As to the Statutory Violations Exclusion, however, Citizens urges us to follow the Illinois Appellate Court's decision in *Visual Pak* and to overrule both *Wynndalco* and *Thermoflex* to find that this exclusion also

unambiguously bars coverage for BIPA claims. Alternatively, Citizens asks that we affirm on an independent ground that the district court did not reach, which is the timeliness of Mullins' notification of the *Galan* suit.

**II.**

As we explain below, our recent decision in *Thermoflex* resolves the parties' dispute as to the clarity of the two exclusions at issue in this case: the Access or Disclosure Exclusion unambiguously excludes coverage for BIPA claims, whereas the Statutory Violations Exclusion does not.

We see no need to extend the litigation further by certifying the proper understanding of either exclusion to the Illinois Supreme Court. The Access or Disclosure Exclusion is clear on its face, and we are confident that the Illinois Supreme Court would find, as we have, that it excludes coverage for BIPA claims. As for the Statutory Violations Exclusion, this court in *Thermoflex* (with the benefit of the Illinois Appellate Court's decision in *Visual Pak*) followed the Illinois Supreme Court's own example in *Krishna* of construing this exclusion and finding it *not* to unambiguously exclude coverage for injuries resulting from BIPA violations. We have no reason to think that the Illinois Supreme Court would depart from the approach it took in *Krishna.*

Consequently, Citizens has no duty to defend or indemnify Mullins under the 2016 and 2017 policies, each of which contains the Access or Disclosure Provision; it does, however, have a duty to defend and indemnify Mullins under the 2015 policy, which lacks the Access or Disclosure Provision and has only the Statutory Violations Exclusion, which we have held not to exclude coverage for BIPA claims.

This assumes, of course, that Mullins gave timely notice to Citizens of the *Galan* litigation. The district court has not yet reached that question—having vacated its prior ruling on the notice issue—and so we will remand in order to allow it to do so.

Finally, the district court incorrectly granted summary judgment to Citizens on Mullins' counterclaim seeking contractual damages for Citizens' failure to supply Mullins with a defense in the *Galan* litigation to date. That Citizens had a right to file this declaratory action to seek a decision on its duty to defend does not relieve Citizens of the obligation to reimburse its insured in the event the court determines that Citizens owed Mullins a defense and that Mullins gave Citizens timely notice of the *Galan* suit.

A. *The Access or Disclosure Exclusion*

This is the more straightforward of the two policy exclusions at issue in this case. Again, the exclusion bars coverage for any claim "arising out of any access to or disclosure of any person's or organization's confidential or personal information," and the list of information qualifying as confidential or personal includes "patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or *any other type of nonpublic information*." (Emphasis ours.) This court's opinion in *Thermoflex* finds this exclusion to unambiguously exclude coverage for BIPA claims, affirming then-District Judge Lee's decision below on this point.

As we noted in *Thermoflex*, Judge Lee reasoned that "the ordinary understanding of 'confidential or personal information' includes handprints and other biometric identifiers

usable for identity theft." 102 F.4th at 440. (BIPA itself, Judge Lee noted, describes biometric identifiers as confidential, i.e. nonpublic, information. *See* 102 F.4th at 440.) We endorsed that conclusion and went on to reject the insured's argument that because patents are expressly identified as one of the types of information covered by the exclusion, and patents are public, the clause was ambiguous.

> True, the list contains mismatched items. But how does this create ambiguity about either the opening phrase ("any person's or organiza-tion's confidential or personal information") or the catchall "any other type of nonpublic infor-mation")? Sticking one blue item into a list that begins "all red items including …" and closes "plus anything pink" does not nullify the lan-guage's application to ruby-colored things.

*Id.* at 441 (citation omitted).

Finally, although the insured in *Thermoflex* pointed to this court's decision in *Wynndalco* and contended that a broad reading of the exclusion threatened to nullify or "swallow" coverage that the insurance policy purported elsewhere to provide, we rejected that argument. We acknowledged that the Illinois Appellate Court's decision in *Visual Pak* found that *Wynndalco* misapprehended Illinois law on this point. *Id.* at 441. But we saw no need to "try to predict whether the Su-preme Court of Illinois is more likely to follow *Visual Pak* than to follow *Wynndalco*. It is enough that the exclusion in this pol-icy does not have the flaw that led to the decision in *Wynndalco*. It leaves plenty of room for coverage of the main insured hazards." *Id.*

*Thermoflex* leaves no doubt that the Access or Disclosure Exclusion bars coverage for BIPA claims. Mullins criticizes the decision and argues that it is inconsistent with the interpretive approach we took in *Wynndalco,* but it is enough to say here that *Wynndalco* did not address the Access or Disclosure Exclusion—it was not presented in that case.

This exclusion is straightforward and explicit, and the ordinary understanding of an individual's "confidential or personal information" plainly includes their biometric identifiers. *Thermoflex*, 102 F.4th at 440–41. As there can be no reasonable doubt that the exclusion excludes coverage for BIPA claims, Citizens does not owe Mullins a duty of defense or indemnification in the *Galan* litigation under the 2016 and 2017 policies.

B.  *The Statutory Violations Exclusion*

A question remains as to whether Citizens owes Mullins a duty of defense under the 2015 policy, which does not include the Access or Disclosure Exclusion. The 2015 policy does include the Statutory Violations Exclusion, which the district court ultimately found to bar coverage for BIPA claims and relieve Citizens of a duty to defend.

What makes this provision more challenging to construe is that it lists several statutory violations that are expressly excluded by name from coverage (violations of the Telephone Consumer Protection Act, CAN-SPAM Act, and the Fair Credit Reporting Act) but then concludes with a broad catchall that purports to exclude coverage for violations of "[a]ny federal, state or local statute, ordinance or regulation, other than the [three federal statutes listed previously] that addresses, prohibits, or limits the printing, dissemination,

disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

*Wynndalco*, as we have noted, found the catchall to be ambiguous in large part because a plain-text reading of the exclusion in isolation would purport to exclude or "swallow" coverage for a large swath of statutory claims—including, but not limited to, BIPA privacy claims (*see* n.1, *supra*) —that Coverage B of the policy would lead an insured to believe were covered by the policy as claims for personal and advertising injuries.

The Illinois Appellate Court's decision in *Visual Pak*, of course, disagreed with our application of the "swallowing" principle, emphasizing that even a broad understanding of the exclusion's catchall provision for statutory violations would leave a number of corresponding common-law claims for personal and advertising injuries—including defamation, commercial disparagement, and as relevant here, invasion of privacy—covered by the policy. 2023 IL App (1st) 221160, ¶¶ 99–102, 105. But the court also placed a privacy gloss on the exclusion that significantly narrowed the scope of the catchall provision and obviated the swallowing concern. *Id.* ¶¶ 57–78.

This court in *Thermoflex* had the full benefit of the Illinois court's decision in *Visual Pak* as well as our prior decision in *Wynndalco*, put both decisions aside, turned to the Illinois Supreme Court's decision in *Krishna*, and concluded that the catchall provision of the Statutory Violations Exclusion did not unambiguously exclude coverage for BIPA violations. *Krishna* focused on the statutes expressly mentioned in the exclusion just prior to the final catchall provision—there, the Telephone Consumer Protection Act (which regulates

telephone calls and faxes) and the CAN-SPAM Act (which regulates emails)—and observed that "regulating telephone calls, faxes, and emails is fundamentally different from regulating the collection, use, storage, and retention of biometric identifiers and information … ." 2021 IL 125978, ¶ 55.[3] Applying the *ejusdem generis* canon to determine what the catchall language meant by statutes "other than" the TCPA and CAN-SPAM Act, the court "construe[d] the 'other than' language to mean other statutes of the same general kind that regulate methods of communication like the TCPA and the CAN-SPAM Act." *Id.*, ¶ 58. BIPA was not such a statute. *Id.*

Taking our cue from *Krishna*, our *Thermoflex* decision looked to the statutes cited immediately in advance of the catchall provision to determine what types of statutory provisions the latter provision was meant to reach. We noted that the exclusion began with the same two statutes cited by name in *Krishna* and added a third: the Fair Credit Reporting Act. 102 F.4th at 442.[4]

> One need not get beyond the name of that statute to see how different it is from BIPA. In this diversity suit, we are bound by the way the Supreme Court of Illinois has treated language structured like the Statutory Violation

---

[3] The heading of the exclusion at issue in *Krishna* read, "Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information." 2021 IL 125978, ¶ 58.

[4] The exclusion at issue in *Thermoflex* was unaccompanied by a heading. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2023 WL 319235, at *6 (N.D. Ill. Jan. 19, 2023).

> Exclusion, so we agree with the district court
> that this exclusion … does not apply to BIPA.

*Id*.

*Thermoflex* leaves no doubt as to how we should read the catchall provision here. For a proper understanding of the scope of the catchall, we look to the three statutes expressly identified immediately preceding (and cited in the "other than" clause of) the catchall for guidance as to what other types of statutory violations are subsumed within the catchall. *Krishna* noted that the two statutes named in that case—the TCPA and the CAN-SPAM Act—were unlike BIPA in that they regulated communications. Here as in *Thermoflex*, there is an added third statute—the FCRA—which deals with how individual's credit history is reported to third parties and, as we noted in *Thermoflex*, is also patently different in kind from BIPA. Viewed through the lens of *Krishna*, the catchall provision does not include BIPA violations.[5]

---

[5] Whereas the exclusion at issue in *Thermoflex* had no heading, the exclusion here is titled, "Recording And Distribution Of Material Or Information In Violation Of Law." That distinction does not counsel in favor of a different result. A heading can inform the understanding of the text that follows, but it cannot broaden the reach of the exclusion. *See Wynndalco*, 70 F.4th at 1002 n.10. *Visual Pak* found the wording of an identical heading significant, because one of the multiple meanings of the term "recording" includes the "inscribing on a tangible medium or sorting in an electronic or other medium in such a way as to make it retrievable in perceivable form." 2023 IL App (1st) 221160, ¶ 61. As *Visual Pak* saw things, this meaning of the term "recording" was a strong indicator that the exclusion was focused on privacy, because it was suggestive of the collection of biometric identifiers and information. But the terms "recording" and "distribution" both have many meanings and potentially could apply to a broad range

(continued)

The Statutory Violations Exclusion therefore does not relieve Citizens of the duty to defend and indemnify Mullins in the *Galan* litigation. Assuming that Mullins gave Citizens timely notice of the litigation (a point we address below), then Citizens owed Mullins a defense in the *Galan* suit and must also indemnify Mullins insofar as the suit implicates the 2015 policy.[6]

of information and material, including, for example, the recording and disseminating (via radio or internet) of a copyrighted piece of music; making a digital scan of the drawings and specifications for a patented machine and emailing them to a competitor of the patent holder; downloading the results of an individual's DNA profile and selling it to medical researchers; printing a driver's tollway history and sharing it with law enforcement; assembling a consumer's credit history and transmitting it to retailers and employers; and so on. Here, what gives us the best indication of what types of "recording" and "distribution" the catchall provision was meant to capture are the three statutes identified immediately prior to the catchall, and those statutes, as *Thermoflex* recognized, are very different from BIPA.

[6] For purposes of the settlement with Mullins, the class period was defined to commence on February 24, 2016, several weeks prior to the end of the 2015 policy coverage period. *See Galan v. Mullins Food Prods., Inc.*, No. 2021-CH-00898, Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class, at 3 (Cir. Ct. Cook Cnty. Jul. 5, 2024), reproduced at https://mullinsbipasettlement.com/media/4878149/mlgl_order_preliminarily_approving_class_action_settlement_and_certifying_the_settlement_class.pdf [https://perma.cc/87G3-4STM] (visited May 2, 2025). The parties do not address the import, if any, of the fact that only one of the three policy periods overlaps with the *Galan* lawsuit. That is a matter that can be addressed on remand in the event the district court ultimately concludes that Citizens has a duty to defend and indemnify Mullins.

C. *Breach of the duty to defend*

As we have noted, when Mullins answered Citizens' declaratory judgment complaint, it also filed a counterclaim, Count I of which seeks a declaratory judgment that Citizens owed Mullins a defense in the *Galan* litigation, and Count II of which alleges that Citizens breached its contractual obligation to provide Mullins with that defense. Pursuant to its breach-of-contract claim, Mullins sought reimbursement for the attorney fees and other defense costs it had incurred in the *Galan* litigation to date. In granting Citizens' motion for summary judgment on this claim, the district court relied on a line of Illinois cases holding that an insurer may decline to defend the insured and still preserve its contractual defenses by seeking declaratory relief, as well as an Illinois appellate precedent holding that when an insurer files a declaratory judgment action challenging its duty to defend its insured, the insurer's duty of defense is suspended. *See Those Certain Underwriters at Lloyd's v. Prof'l Underwriters Agency, Inc.*, 848 N.E.2d 597, 601 (Ill. App. Ct. 2006). That suspension, in the district court's view, relieved the insurer of its duty to defend until such time as the court concluded that the insurance contract obligated the insurer to provide a defense to its insured. Consequently, there could be no breach of the duty to defend during the period of suspension that would support an award of damages compensating the insured for its defense costs during that period. "A finding that Citizens breached its duty to defend by contesting coverage and promptly seeking a declaration of no duty to defend would, without more, render

illusory the declaratory judgment option that Illinois courts have long upheld." R. 61 at 30–31.

As we shall see, the parties' dispute on this point is less about the fact of Citizens' prospective liability to Mullins than about how to characterize that liability. Citizens' position, which the district court adopted, is that it cannot be said to have breached an obligation to defend Mullins given that it filed this declaratory action. Mullins, on the other hand, argues that if the district court ultimately concludes that Citizens had a duty to defend it, then Citizens necessarily will have breached that duty by not providing that defense (in the form of a lawyer or payment for one) in the three-plus years since Mullins notified Citizens of the *Galan* suit.

Citizens does not contest that, if the court finds a duty to defend, it must reimburse Mullins for its defense costs. Its quarrel is with the label "breach of the duty to defend" and the baggage that carries as a matter of Illinois insurance law: breach of the duty to defend is typically identified as a basis for estopping the insurer from raising contractual defenses to policy coverage. Because Citizens timely sought declaratory relief as to its duty to defend, it cannot be estopped from asserting such defenses. Yet, as Citizens concedes, filing this suit does not shield Citizens from responsibility for Mullins' defense costs if the court ultimately rules in Mullins' favor. Where Illinois law is unclear is on what legal theory the obligation to compensate Mullins can be made part of a judgment in its favor. As we conclude below, because Citizens concedes that if it owed Mullins a duty of defense it must reimburse Mullins for its defense costs, we need not resolve that issue definitively. In the event the district court resolves this action in Mullins' favor, the district court must provide Mullins with

an appropriate remedy as to its defense costs, if only as an aspect of the declaratory relief it awards to Mullins.[7]

As a matter of Illinois law, by timely filing a declaratory judgment action as to coverage, an insurer avoids the prospect of being estopped from raising coverage defenses. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 349–50 (7th Cir. 2010) (applying Illinois law); *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1232 (Ill. 1999). Illinois was among the first of a minority of state jurisdictions to adopt an estoppel rule in the context of the duty to defend. *See* Stanley C. Nardoni, *Estoppel for Insurers Who Breach Their Duty to Defend: Answering the Critics*, 50 J. MARSHALL L. REV. 53, 56–64, 70–77 (2016). Generally, where a suit against the insured alleges facts that are potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not cover the claim, the insurer must follow one of two courses in order to fully preserve its rights: (1) defend the suit under a reservation of rights, or (2) seek a declaratory judgment that there is no duty to defend. *Std. Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 19. The estoppel rule applies when the insured notifies its insurer of a claim against it and the insurer, believing it has no duty to defend, takes neither of these two avenues; instead, it does nothing, leaving the insured to its own devices. In that scenario, if it is later determined that the insurer wrongfully denied its insured a defense, then the insurer will be estopped from raising any policy defenses. *E.g.*, *Emp'rs Ins. of Wausau v. Ehlco Liquidating*

---

[7] We understand Mullins' breach-of-contract claim to be seeking only compensation for its defense costs in the *Galan* litigation and no other relief. Our analysis is therefore limited to the request for reimbursement of Mullins' defense costs, including its attorney fees, in the *Galan* action.

*Trust*, 708 N.E.2d 1122, 1134–35 (Ill. 1999). Thus, even if it turns out that the underlying claim against the insured falls outside the coverage provided by the policy, the insurer will nonetheless be deemed liable to pay the claim. *See Thornton v. Paul*, 384 N.E.2d 335, 340 (Ill. 1978), *overruled in part on other grounds by Am. Fam. Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 449–51 (Ill. 2000); *Martin*, 710 N.E.2d at 1231–32. The rationale for estoppel is that where the insurer has, without justification, refused to defend its insured against a suit that plausibly falls within the coverage of the policy and taken no steps to independently confirm that it is not contractually required to defend the insured, it has effectively repudiated the policy and therefore should not be heard later to claim that the policy terms do not provide coverage. "[T]he insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i.e., the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i.e., the defense provisions. In this sense it may properly be said to be estopped." *Sims v. Ill. Nat'l Cas. Co.*, 193 N.E.2d 123, 129 (Ill. App. Ct. 1963); *see also Clemmons v. Travelers Ins. Co.*, 430 N.E.2d 1104, 1109 (Ill. 1981) ("The court will not enforce the insurer's protections under the policy where the insurer has failed to act equitably, that is, failed to defend under a reservation of rights or to bring a declaratory judgment action to determine whether there was coverage under the policy.") (citations omitted); *Edward T. Joyce & Assocs., P.C. v. Prof'ls Direct Ins. Co.*, 816 F.3d 928, 932 (7th Cir. 2016) ("Under Illinois law, 'an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract.'") (quoting *Ehlco*, 708

N.E.2d at 1135); *Ehlco*, 708 N.E.2d at 1136 ("The insurer cannot simply abandon its insured.").

Citizens did not repudiate its agreement with Mullins but rather sought prompt judicial resolution of its contention that the *Galan* suit was clearly excluded from coverage under the policy and that it thus had no duty to defend Mullins. *See Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 334 (Ill. 1991). In the ideal course of events, the declaratory judgment action would resolve the insurer's duty to defend before the underlying claim proceeds to litigation, so that if the insured is owed a defense under the insurance policy, it is given one. *See id.* at 334 ("It is the purpose of the declaratory judgment action to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations. The parties involved in the controversy can then learn the consequences of their action before they act.") (citations omitted). But events do not always play out as the parties might wish. Not infrequently, the underlying claim against the insured may proceed to litigation, even judgment, before the declaratory judgment action finally resolves the duty to defend. In that eventuality, the insured will have been left to defend the underlying action entirely on its own, as Mullins was here, before the parties learn whether the insured was owed a defense. Even in that scenario, however, so long as the insurer timely filed suit for declaratory judgment, the insurer will still enjoy the benefit of a safe harbor from estoppel, as the Illinois Supreme Court held in *Martin*, 710 N.E.2d at 1232. The Illinois Appellate Court's decision in *Those Certain Underwriters* in turn construes *Martin* to mean that once the insurance company has filed a declaratory judgment action, its duty to represent the insured is "suspended"

unless and until the court determines that the insurer is obligated to defend the insured. 848 N.E.2d at 601, 604.

The district court here understood *Those Certain Underwriters* to signal that an insurer's decision to seek declaratory relief precludes a subsequent finding that the insurer breached its duty to defend by leaving the insured to defend itself in the meantime without help from the insurer, even if the district court later concludes that the insurance contract in fact obligated the insurer to defend the insured. R. 61 at 30–31.

We are not so sure. *Those Certain Underwriters* itself recognizes that an insurer will be liable to the insured for its defense costs in the event the declaratory judgment action culminates in a finding that the insurer is bound to defend the insured:

> As defendants note in their reply brief, once a court has ruled that an insurer breached its duty to defend, the insurer will be liable to its insured for defense costs. *General Star Indemnity Co.* [*v. Lake Bluff Sch. Dist. No. 65*, 819 N.E.2d 784, 794 (Ill. App. Ct. 2004)]. Thus, should the insurer ultimately fail in its declaratory judgment action … it may be liable for the cost of the defense *it should have provided* during the period of suspension. …

848 N.E.2d at 603 (emphasis ours).[8]

---

[8] *Those Certain Underwriters* was a rescission case: the insurer alleged that the insured had made fraudulent misrepresentations in its application for insurance and sought a declaration that it had no duty to defend the

(continued)

The court's citation to *General Star Indemnity* reinforces the point. *General Star Indemnity* reviewed a trial court's declaratory judgment that an insurance company was obliged to defend its insured (a school district) on two of three claims asserted against the insured in a federal disability rights lawsuit. The appellate court affirmed the lower court as to those two claims but reversed the trial court as to the third claim, concluding that the policy in question entitled the insured to a defense on that claim as well. It proceeded to award the insured the costs and fees it had incurred in defending that third claim, reasoning that the insured was entitled to recovery of those expenses for the insurer's breach of contract. *Gen. Star Indem.*, 819 N.E.2d at 794. *See also Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 893 (N.D. Ill. 2018) (finding that insurer breached its duty to defend insured by rejecting the insured's tender of claim notwithstanding insurer's decision to file declaratory judgment action), *app. dismissed*, 2018 WL 8053818 (7th Cir. Dec. 13, 2018); *Am. Alt. Ins. Corp. v. Metro Paramedic Servs., Inc.*, 75 F. Supp. 3d 833, 847 (N.D. Ill. 2014) (same), *j. aff'd*, 829 F.3d 509 (7th Cir. 2016).

Thus, even taking at face value *Those Certain Underwriters'* language about an insurer's duty to defend being suspended until the declaratory judgment has been resolved,[9] that

---

insured on that basis. Although the case was distinct in this sense from the run-of-the mill duty to defend case, *Those Certain Underwriters* applied traditional duty-to-defend cases and in turn has been cited as authoritative in such cases.

[9] This aspect of *Those Certain Underwriters* has been criticized. *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 418–19 (Ind. Ct. App. 2008) (citing John S. Vishneski III, *The Illinois Supreme Court Gives Policyholders a Break from the Two-Front War*, 27 N. Ill. U. L. Rev. 35, 59–60 (2006)).

precedent itself suggests that once a court has entered a declaratory judgment recognizing that the insured is bound to defend its insured, the insurer will be liable in contract for the fees and costs the insured has shouldered to date. Filing the declaratory judgment action will have insulated the insurer from estoppel—thus preserving the insurer's contractual defenses—but not from (eventual) liability for the cost of the defense "it should have provided" to the insured while the duty to defend was being litigated in the declaratory action. 848 N.E.2d at 603.[10]

Ultimately, Citizens' concern is less with the logic of its prospective liability to Mullins than with the label "breach," which it reads as being inconsistent with *Those Certain Underwriters* and exposing it to estoppel. How then to reconcile Citizens' potential liability for having failed to defend Mullins with Citizens' right to avoid estoppel? One way to do so might be to distinguish between a breach of the duty to defend so serious that it amounts to a repudiation of the insurance agreement—thus meriting estoppel—and a more quotidian breach that results only in liability for defense costs. Another might be to say that the insurer's duty to defend is suspended upon filing an action for declaratory judgment and remains so until such time as the court finds that the

---

[10] This is consistent with the principle that the duty to defend arises at the time an insured gives its carrier notice of a claim potentially within the scope of the insurance policy, as opposed to the point at which a court later confirms that the insurer is obligated to defend its insured. *See St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1042 (7th Cir. 2024) (citing *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 721 (Ill. App. Ct. 2004)); *Lexington Ins. Co. v. Chi. Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020); *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 216 (Ill. 2004).

insurer is obligated to defend the insured, at which point the insurer becomes retroactively liable for failing to defend its insured and will now owe the insured a defense going forward (if the underlying claim remains unresolved) and reimbursement for its accrued defense costs as an "amount due," but not as damages for a breach of contract. Either view would be based on the contract, and in this case, relief presumably could be ordered pursuant to Mullins' contractual claim. Alternatively, the obligation to compensate Mullins could be made part of the relief on its counterclaim for declaratory relief.

But we need not resolve the appropriate theoretical basis for ordering Citizens to reimburse Mullins in the event the court determines that Citizens was obliged to defend Mullins. Citizens has made clear both below and on appeal that it does not contest its obligation to reimburse Mullins if the court finds that Citizens owed it a defense. *See* Citizens Br. 44, 46; R. 89 at 6. There being no dispute on that score, we leave it to the parties and the district court on remand to arrive at an agreeable means of ensuring that Mullins is appropriately reimbursed for its defense costs in the event that the court enters declaratory relief in favor of Mullins and against Citizens.

To eliminate any doubt: estoppel is off the table, but reimbursement to Mullins for its defense costs is not.

For these reasons, we vacate the entry of summary judgment against Mullins on Count II of the counterclaim. In the event the district court ultimately resolves the notice issue in favor of Mullins, thus confirming that Citizens owes Mullins a duty of defense in the *Galan* suit under the 2015 policy, Citizens will be liable to Mullins for the costs and fees Mullins has incurred in defending itself in *Galan*.

D. *Timeliness of Mullins' notice of the* Galan *litigation*

The insurance policies include a provision requiring the insured, in the event a claim is made or a suit is filed against it, to notify Citizens in writing "as soon as practicable." R. 1-1 at 172, 408, 691. Not until nearly a year after it learned of the *Galan* suit did Mullins notify Citizens of the action and request a defense. Citizens argued below that this was too late to constitute timely notice under the policy.

The district court initially denied summary judgment on this question, finding that there were unresolved issues of material fact that precluded summary judgment. R. 61 at 25–28. Subsequently, when the court, on reconsideration concluded that the Access or Disclosure and Statutory Violations Exclusions barred coverage for the BIPA violations alleged in the *Galan* suit, the court vacated its summary judgment ruling as to notice as moot. R. 98 at 28. Citizens now asks us to take up the notice question and hold that it is entitled to summary judgment on the issue.

We leave it to the district court, however, to revisit the notice issue on remand. Given that the district court vacated its prior ruling on the issue, there is, at present, no ruling for us to review. Moreover, the court's previous ruling on notice was one denying summary judgment, which is ordinarily not appealable under 28 U.S.C. § 1291. *Dupree v. Younger*, 598 U.S. 729, 733–34 (2023); *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014); *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023). Citizens is, of course, free to renew its arguments as to the timeliness of Mullins' notice in the district court on remand, but we leave it to the district court's discretion how best to resolve the issue, including the option of reinstating its prior decision on this subject.

### III.

For the foregoing reasons, we have concluded that the Access or Disclosure Exclusion found in the 2016 and 2017 commercial liability policies that Citizens issued to Mullins bars coverage for injuries resulting from BIPA violations, whereas the Statutory Violations Exclusion, found in the 2015 policy as well as the 2016 and 2017 policies, does not. Citizens may therefore owe Mullins a duty of defense and indemnification under the 2015 policy, assuming that Mullins gave timely notice of the underlying claim to Citizens. The question of timely notice is to be resolved on remand. In the event the district court concludes that Mullins did provide Citizens with timely notice of the underlying claim and was thus owed a defense by Citizens in the *Galan* litigation, the judgment must incorporate reimbursement to Mullins for the fees and costs it incurred defending the *Galan* suit on its own while Citizens pursued this declaratory action. We therefore VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion. The parties shall bear their own costs of appeal.